*In re* S.V., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. S.V., Respondent-Appellant).

First District (6th Division)    No. 1—00—3364

Opinion filed November 30, 2001.

---

[1]Justice Barth participated in the Rule 23 order prior to his retirement on September 30, 2001. Publication has been allowed.

Rita A. Fry, Public Defender, of Chicago (Todd Avery Shanker, Assistant Public Defender, of counsel), for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb and Theodore F. Burtzos, Assistant State's Attorneys, of counsel), for the People.

JUSTICE O'MARA FROSSARD delivered the opinion of the court:
The 13-year-old minor-respondent, S.V., was charged with aggravated unlawful use of a weapon, unlawful possession of a firearm, and unlawful use of a weapon. After a bench trial S.V. was found guilty of aggravated unlawful use of a weapon. S.V. was adjudicated delinquent and sentenced to probation for one year.

Respondent argues on appeal that the evidence seized must be suppressed and the conviction reversed because the arresting officer did not have reasonable articulable suspicion to justify the stop and frisk of S.V. We find the stop and frisk were legally justified and affirm.

## BACKGROUND

On April 17, 2000, at about 5 p.m., Officer Michael Nallen and his two partners received several anonymous radio calls about a gang fight with shots fired at Cermak Road and Western Avenue. Officer Nallen was given some descriptions of the suspects, but could not recall the specific descriptions given. At about 5:15 p.m., in response to these multiple calls, Officer Nallen drove westbound toward Cermak and Western. Approximately two blocks east and one block south of that location, at approximately 2238 West 21st Street, he observed

the respondent in the street, walking eastbound with two other people. Officer Nallen saw the respondent and the two other people flashing gang signs of the Satan Disciples at passing vehicles and passing citizens. Officer Nallen did not speak to citizens, either driving in their cars or out on the street, who had been the subject of the gang signs flashed by respondent because they had "fled." During the hearing on the motion to suppress Officer Nallen testified:

"Q. So you were investigating gang-related shootings?

A. Yes.

Q. That's when you came upon the minor respondent and his two other friends flashing gang signs, correct?

A. That's correct.

Q. You recognized these to be gang signs?

A. That's correct.

Q. Upon seeing these gang sings, you curbed your vehicle?

A. Right.

Q. You approached the minor respondent?

A. Correct.

Q. And you wanted to ask him about what he had been doing in relation to the gang shootings, correct?

A. Correct.

Q. That's when you performed a protective pat-down?

A. Correct."

Regarding his reasons for the protective pat-down, Officer Nallen testified on cross-examination by the State as follows:

"Q. Why did you perform a protective pat-down of this minor?

A. For my safety and the safety of my partners.

Q. For your safety in what way?

A. I don't want to die.

Q. Were you concerned that there were guns on this minor?

A. Yes, I was."

Officer Nallen also testified on cross-examination as to his familiarity and experience with the area where he encountered the respondent:

"Q. How long have you been a police officer?

A. It will be seven years in November.

Q. Are you familiar with this area in which you were arresting the minor respondent?

A. Yes, I am.

Q. How would you describe this area?

* * *

A. That area is Satan Disciples territory, highly gang infested. We have had numerous shootings in that area.

Q. Have you made arrests for weapon offenses in that area?

A. Absolutely.

Q. How many have you made?

A. In my career there?

Q. Yes.

A. I don't know if I can tell you offhand. I made numerous weapons arrests on that block, the 21st Street block.

\* \* \*

Q. You knew the shootings, the gang shootings, that you were going to investigate [were] done by Satan Disciples, correct?

A. That information, I didn't have. But it was in their area, so I was figuring they were probably involved.

Q. In your experience as a police officer for the last seven years, you thought the gang shooting was involving Satan Disciples?

A. Correct."

The respondent and the two other people he was with were told to place their hands on the police car. As Officer Nallen patted down the area of respondent's front waistband, he felt what he believed to be a weapon. Officer Nallen then reached in and retrieved a .357 Magnum handgun and placed S.V. under arrest.

The trial judge, considering the totality of the circumstances, denied respondent's motion to suppress. The parties then stipulated that the evidence for trial was the same as the evidence from the suppression hearing. S.V. was adjudicated delinquent based on being found guilty of aggravated unlawful use of a weapon. This appeal followed.

## ANALYSIS

The respondent contends that the police illegally stopped and searched him because they did not have reasonable suspicion that he had committed a crime or that he was armed and an immediate threat to them. The State argues that the respondent was properly stopped and searched because the police had reasonable suspicion to believe that he had been involved in a gang shooting and therefore could pat him down for weapons.

■ A trial court's ruling on a motion to suppress will not be reversed unless it is manifestly erroneous. *People v. Hoskins*, 101 Ill. 2d 209, 212 (1984). When there is no dispute as to the facts or as to witness credibility, the standard of review is *de novo*. *People v. Dilworth*, 169 Ill. 2d 195, 201 (1996). Here, the facts and witness credibility are not in dispute; therefore, we will conduct a *de novo* review.

## I. *TERRY* STOP

■ The respondent contends his federal and state constitutional rights were violated because the police did not have legal justification to conduct a *Terry* stop pursuant to the principles articulated in *Terry v. Ohio*, 392 U.S. 1, 21, 20 L. Ed. 2d 889, 906, 88 S. Ct. 1868, 1880

(1968); U.S. Const., amends. IV, XIV; Ill. Const. 1970, art. I, § 6. The State argues that respondent was properly stopped because the totality of the facts articulated by Officer Nallen provided sufficient reasonable suspicion for the investigative stop pursuant to *Terry v. Ohio*. *Terry*, 392 U.S. at 21, 20 L. Ed. 2d at 906, 88 S. Ct. at 1880. "On a motion to suppress evidence, the burden of proof is on the defendant to establish that the search and seizure were unreasonable." *People v. Neal*, 109 Ill. 2d 216, 218 (1985); see also 725 ILCS 5/114—12(b) (West 2000).

■ The fourth amendment to the United States Constitution guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., amend. IV. Reasonableness under the fourth amendment generally requires a warrant supported by probable cause. *People v. Flowers*, 179 Ill. 2d 257, 262 (1997). An exception to the warrant requirement was recognized by the Supreme Court in *Terry v. Ohio*, which held that " 'where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot ...,' the officer may briefly stop the suspicious person and make 'reasonable inquiries' aimed at confirming or dispelling his suspicions." *Minnesota v. Dickerson*, 508 U.S. 366, 373, 124 L. Ed. 2d 334, 344, 113 S. Ct. 2130, 2135 (1993), quoting *Terry*, 392 U.S. at 30, 20 L. Ed. 2d at 911, 88 S. Ct. at 1884. Before legally stopping someone, the officer must establish the existence of "reasonable, articulable suspicion" that the person has committed or is about to commit a crime. *Illinois v. Wardlow*, 528 U.S. 119, 123, 145 L. Ed. 2d 570, 576, 120 S. Ct. 673, 675 (2000). In determining the reasonableness of the officer's conduct, the facts must be considered, not in terms of analytical hindsight but, rather, as they would have been evaluated by a reasonable officer in the performance of his duties. *People v. Smithers*, 83 Ill. 2d 430, 439 (1980). Courts should be mindful that the decision to make an investigatory stop is a practical one based on the totality of the circumstances. *People v. Sorenson*, 196 Ill. 2d 425, 439 (2001).

■ The *Terry* standards regarding an investigatory stop have been codified in our Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/107—14 (West 2000)). Section 107—14 of the Code provides, in pertinent part:

> "Temporary Questioning without Arrest. A peace officer *** may stop any person in a public place for a reasonable period of time when the officer reasonably infers from the circumstances that the person is committing, is about to commit or has committed an offense *** and may demand the name and address of the person and an explanation of his actions." 725 ILCS 5/107—14 (West 2000).

A temporary stop to investigate under *Terry v. Ohio* is legally justified if a police officer articulates facts to establish reasonable suspicion that a person is involved in criminal activity. In deciding whether the officer acted reasonably, due weight must be given to the specific reasonable inferences that he is entitled to draw from the facts in light of his experience. *Terry*, 392 U.S. at 27, 20 L. Ed. 2d at 909, 88 S. Ct. at 1883. Here, Officer Nallen had been a police officer for almost seven years. Officer Nallen received several calls about a gang fight involving shots fired in the area of Cermak and Western. He proceeded toward that location. Within 15 minutes of receiving these calls, the officer was within 2½ blocks of Cermak and Western, where he observed respondent and two other persons flashing Satan Disciples gang signs. Based on his experience with the gang activity in that area, Officer Nallen testified that he thought the Satan Disciples were involved in the gang shooting because this area is their territory.

■ Upon observing respondent flashing Satan Disciple gang signs at passing cars and citizens within 2½ blocks of the gang shooting, Officer Nallen suspected that respondent may have been involved in the criminal activity. This observation of respondent was made by Officer Nallen within minutes of receiving the call about a gang fight involving shots fired. Respondent was walking away from the area of the reported gang shooting. Respondent was flashing gang signs of the Satan Disciples at passing vehicles and passing citizens. Based on Officer Nallen's seven years of experience, he believed the shooting involved the Satan Disciples as the incident under investigation occurred in their territory. Considering the totality of the circumstances, Officer Nallen had reasonable suspicion that respondent was involved in criminal activity. Therefore, a brief investigatory stop of respondent at that point was legally justified.

Respondent relies on *People v. F.J.*, 315 Ill. App. 3d 1053 (2000), to support the argument that an investigatory stop of respondent was not legally justified. In *F.J.* the police responded to a report of a "gang disturbance" in a high-crime area during evening hours. The responding officer saw F.J. standing near an alley in that area. As the officer exited the car, F.J. glanced at the officer and then put an object into his pocket. The officer performed a pat-down frisk of F.J. and recovered a handgun from the minor's pocket. This court held that neither a stop nor frisk was legally justified under these circumstances.

*F.J.* differs from this case. Officer Nallen was responding to a more specific call, namely, a gang fight involving shooting. While the report in *F.J.* of a "gang disturbance" did not necessarily indicate that guns were involved, the incident reported in this case, a "gang fight with shots fired," did so indicate. In *F.J.* there was nothing to lead the offic-

ers to believe that defendant had been part of or was in any way connected to the nearby gang disturbance. That connection was not lacking under the facts of this case.

In the present case, Officer Nallen was on his way to investigate a gang shooting in an area infested by Satan Disciples. Respondent was within 2½ blocks of the area under investigation. Based on his familiarity with the gang activity in the area, Officer Nallen believed the Satan Disciples were involved in the gang shooting he was in the process of investigating. Respondent, unlike F.J., was not merely standing in the area, but was flashing Satan Disciples gang signs at passing vehicles and passing citizens and moving away from the area of the alleged shooting under investigation. The totality of the circumstances, including the location and conduct of S.V., caused Officer Nallen to believe that defendant had been involved in the nearby gang disturbance. At that point a brief investigatory stop of respondent was reasonable. The facts known to Officer Nallen provided the reasonable articulable suspicion necessary to justify the stop of S.V.

## II. *TERRY* FRISK

■ Whether a stop and frisk were justified presents two separate legal questions. *People v. Galvin*, 127 Ill. 2d 153, 163 (1989). The fact that an officer has reasonable articulable suspicion to stop a person does not automatically justify the additional intrusion of a search for weapons. *People v. Pence*, 225 Ill. App. 3d 1061, 1063 (1992). As noted by the Court in *Terry*, the police may conduct such a limited search if they reasonably believe they are in danger and can provide "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry*, 392 U.S. at 21, 20 L. Ed. 2d at 906, 88 S. Ct. at 1880; see also 725 ILCS 5/108—1.01 (West 2000).

■ The *Terry* standard regarding a limited search for weapons, commonly referred to as a "frisk," has been codified in our Code of Criminal Procedure. Section 108—1.01 of the Code provides, in pertinent part:

"Search During Temporary Questioning. When a peace officer has stopped a person for temporary questioning pursuant to Section 107—14 of this Code and reasonably suspects that he or another is in danger of attack, he may search the person for weapons." 725 ILCS 5/108—1.01 (West 2000).

In order to legally conduct a weapons frisk under *Terry* and section 108—1.01, the officer must have reason to believe that "the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others." *Terry*, 392 U.S. at 24, 20 L. Ed. 2d at 908, 88 S. Ct. at 1881. The justification for

the search allowed by the *Terry* exception is the protection of the police officer and others in the vicinity, not to gather evidence. *Dickerson*, 508 U.S. at 373, 124 L. Ed. 2d at 344, 113 S. Ct. at 2136. If the protective search goes beyond what is necessary to determine if a suspect is armed, it is no longer valid under *Terry* and its fruits will be suppressed. *Dickerson*, 508 U.S. at 373, 124 L. Ed. 2d at 344, 113 S. Ct. at 2136.

Respondent argues that the police did not have a reasonable suspicion that S.V. was involved in any criminal activity and, therefore, the frisk was a violation of respondent's federal and state constitutional rights. U.S. Const., amends. IV, XIV; Ill. Const. 1970, art. I, § 6. The State contends that the totality of the facts articulated by Officer Nallen provided sufficient reasonable suspicion to justify the frisk or protective pat-down of respondent.

We find *People v. Lee*, 48 Ill. 2d 272 (1971), instructive. In *Lee*, the police were assigned to patrol an area where a gang war was expected to occur. The officers heard what they believed to be gunshots. Within two minutes and about two blocks away, the officers saw six people walking in the area where the gunshots had been heard. Four of the six people were wearing the type of clothing worn by one of the gangs that might have been involved. The officers stopped and frisked all six people. The Illinois Supreme Court found the stop and search reasonable under *Terry*. *Lee*, 48 Ill. 2d at 277.

Here, Officer Nallen testified that he was investigating a gang shooting and that the location of the stop was a highly gang-infested area where he had made numerous weapons arrests and where numerous shootings had occurred. Officer Nallen testified he asked respondent what he was doing in the area as he started to perform the protective pat-down. Officer Nallen testified that for his "safety and the safety of [his] partners," he conducted a protective pat-down of the respondent because he was concerned that there were guns on this minor.

Officer Nallen did not need to be certain that respondent was armed in order to conduct a frisk under *Terry*. Courts should not place an onerous burden on the sufficiency of the officer's suspicion that the defendant is armed and dangerous when the safety of the officer is at stake. *People v. Kantowski*, 98 Ill. 2d 75, 81 (1983). However, we are mindful that the limited exception recognized in *Terry* clearly does not permit police officers to routinely frisk individuals, without concern for whether a particular person poses a danger. The issue is whether a reasonably prudent man in the circumstances would be justified in the belief that his safety or that of others was in danger. *Terry*, 392 U.S. at 27, 20 L. Ed. 2d at 909, 88 S. Ct. at 1883.

■ The officer conducting the frisk must be able to point to specific, articulable facts which, when taken together with natural inferences, reasonably warrant the intrusion. *Terry,* 392 U.S. at 21, 20 L. Ed. 2d at 906, 88 S. Ct. at 1880. The facts need not satisfy probable cause standards, but must constitute more than a mere hunch. The standard is an objective one; however, the officer's subjective belief regarding the safety of the situation is one of the factors that may be considered in deciding whether a weapons frisk was valid under *Terry.* *People v. Galvin,* 127 Ill. 2d 153, 169 (1989).

■ Here, Officer Nallen was investigating a gang fight with shots fired. He believed the Satan Disciples were involved in the gang shooting based on his experience as a police officer for the last seven years and his familiarity with the area under investigation. He observed respondent flashing gang signs of the Satan Disciples at citizens passing by. He indicated that the flashing of gang signs lets citizens know that they are in Satan Disciples territory. Respondent was within 2½ blocks of the area under investigation. He described this area as highly gang infested where there had been numerous shootings and arrests for weapons violations. Within 15 minutes of the gang shooting being reported, respondent was observed flashing gang signs and walking away from the area under investigation.

Officer Nallen specifically testified about a concern for his safety and his concern that the respondent had a weapon. Regarding the reasons for the protective pat-down, Officer Nallen testified as follows to the questions asked by the State:

"Q. Why did you perform a protective pat-down of this minor?
A. For my safety and the safety of my partners.
Q. For your safety in what way?
A. I don't want to die.
Q. Were you concerned that there were guns on this minor?
A. Yes, I was."

The evidence demonstrated that Officer Nallen feared for his safety in this case based on the combination of all the factors that confronted him at the time of the stop. We conclude, based on the totality of the circumstances, that there were sufficient specific facts articulated as a basis for Officer Nallen to reasonably fear that the respondent might be armed and dangerous. The specific facts taken together with rational inferences from those facts justified the weapons frisk of respondent by Officer Nallen.

## CONCLUSION

The facts known to Officer Nallen provided reasonable articulable suspicion that justified the investigative stop of S.V. The facts known to Officer Nallen established a reasonable articulable suspicion that

S.V. was armed and dangerous so as to justify the protective pat-down or frisk of S.V. Based on the totality of the circumstances, we conclude that Officer Nallen was legally justified in stopping and frisking respondent because he had reasonable articulable suspicion to temporarily stop and frisk S.V. pursuant to *Terry v. Ohio*. The stop and frisk of S.V. did not violate his federal and state constitutional rights. U.S. Const., amends. IV, XIV; Ill. Const. 1970, art. I, § 6.

For the reasons previously discussed, we find that the trial court properly denied the defendant's motion to suppress. Accordingly, we affirm the trial judge's finding of delinquency.

Affirmed.

BUCKLEY and O'BRIEN, JJ., concur.