No. 2--05--0704        Filed 2-16-07

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of McHenry County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 03--CF--167 |
| | ) | Honorable |
| WILLIAM J. NITZ, | ) ) | Ward S. Arnold and Sharon L. Prather, |
| Defendant-Appellant. | ) | Judges, Presiding. |

_____

JUSTICE BYRNE delivered the opinion of the court:

Following a stipulated bench trial in the circuit court McHenry County, defendant, William J. Nitz, was found guilty of a single count each of unlawful possession of cannabis (720 ILCS 550/4(d) (West 2002)) and unlawful possession of cannabis with intent to deliver (720 ILCS 550/5(d) (West 2002)) and was sentenced to a two-year term of probation. Prior to trial, defendant filed separate motions to quash his arrest and to suppress evidence. The trial court denied the motions. Defendant argues on appeal that he did not receive effective assistance of counsel, because his trial attorney failed to file a posttrial motion challenging those rulings. Defendant alternatively argues that the denial of his motions was plain error. We affirm.

Evidence presented at the hearing on defendant's motion to quash his arrest establishes that on February 18, 2003, Jennifer Spalla, a detective with the narcotics unit of the McHenry County sheriff's department, arrested an individual identified as "Confidential Informant 263" for unlawful

possession and unlawful delivery of controlled substances. After he was arrested, the informant had a conversation with Detective Spalla in which Anton Cundiff, a sergeant with the McHenry County sheriff's department, and Ryan Sciame, a McHenry police officer, also participated. The informant was told that if he helped the police investigate drug activity, he might receive favorable treatment in his own prosecution. The informant indicated that he could obtain a pound of marijuana from defendant, and the officers asked the informant to contact defendant by telephone to set up the transaction.

The informant made a call on a cellular telephone provided by one of the officers. The officers were present and were able to hear the informant's side of the conversation. Sergeant Cundiff testified that the informant "said Billy, and he talked about having three ounces, and there was a possibility of getting another half pound but he didn't know for sure, and *** he made arrangements to meet with him [at a convenience store] about 10:15 that night." After the telephone conversation, the informant related that he had spoken with defendant and made arrangements to pick up at least three ounces of marijuana at a convenience store in McHenry. The informant indicated that defendant would be driving a Buick Park Avenue.

Detective Spalla, Officer Sciame, Sergeant Cundiff, and other law enforcement officers proceeded to the convenience store where the transaction was to take place. One of the officers brought a police dog trained to detect the presence of narcotics. When the officers arrived at about 10:10 p.m., there was a gray Buick Park Avenue parked in the store's lot. Officer Sciame was able to read the Buick's license plate, and he determined that the vehicle was registered to defendant. Officer Sciame, who was driving an unmarked vehicle, drove up behind the Buick, blocking it from driving away, and then approached the driver's side of the vehicle. Defendant was in the vehicle, and

he rolled down his window for Officer Sciame. When defendant did so, Officer Sciame noticed a "fresh cannabis smell." Officer Sciame testified that he was familiar with the odor of cannabis from his training and experience as a police officer. Officer Sciame asked defendant if his name was William Nitz, and defendant replied that it was. Officer Sciame asked defendant to step out of the vehicle. Shortly after defendant emerged from the vehicle, Officer Sciame placed him in handcuffs and frisked him for weapons. An officer walked the police dog around the Buick, and the dog indicated that there were drugs in the vehicle. The vehicle was then searched. The record reflects that approximately three ounces of marijuana were recovered from defendant's vehicle.

At the close of defendant's evidence, the trial court granted a motion by the State for a finding in its favor and denied defendant's motion to quash. Defendant then filed a separate motion to suppress evidence. However, at the hearing on the motion, the trial court indicated that it would not revisit the question of whether there was probable cause to arrest defendant. As with the motion to quash, the trial court granted a motion by the State at the close of defendant's evidence for a finding in its favor and denied the motion to suppress.

As noted, the matter proceeded to a stipulated bench trial. On April 15, 2005, based on the parties' stipulations, the trial court found defendant guilty. Defendant was sentenced on June 15, 2005. That same day, defendant's attorney was granted leave to withdraw. Defendant's attorney did not file a posttrial motion on defendant's behalf. Defendant filed a timely notice of appeal.

Defendant argues on appeal that his trial attorney's failure to file a posttrial motion challenging the rulings on his motions to quash his arrest and suppress evidence deprived him of his right to the effective assistance of counsel. According to defendant, counsel's failure to do so (1) deprived defendant of the opportunity to have the trial court reconsider its rulings; and (2) deprived him of the

opportunity to have this court review the rulings, except, perhaps, under the plain error rule. Under the two-prong test set forth in Strickland v. Washington, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984), a defendant claiming ineffective assistance of counsel must show that his counsel's performance "fell below an objective standard of reasonableness" and that the deficient performance was prejudicial in that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 688, 694, 80 L. Ed. 2d at 693, 698, 104 S. Ct. at 2064, 2068. Defendant contends that the denial of his motions to quash and suppress was erroneous and that there is a reasonable probability that he would have been acquitted or his conviction would have been reversed on fourth amendment grounds if counsel had filed a posttrial motion. The State responds that trial counsel's failure to file a posttrial motion did not forfeit appellate review of the rulings on the motions to quash and suppress. Therefore, according to the State, defendant has suffered no prejudice. The State is correct. Because the parties proceeded by way of a stipulated bench trial, defendant was not required to file a posttrial motion to preserve review of the rulings on the motions to quash his arrest and suppress evidence. People v. Cordero, 358 Ill. App. 3d 121, 124-25 (2005). Thus, the fourth amendment issue underlying defendant's ineffective-assistance-of-counsel claim is properly before us in its own right, and we may address the merits of that issue directly, i.e., without regard to trial counsel's effectiveness.

A defendant moving to quash an arrest and suppress evidence must make a prima facie case that the police lacked probable cause to arrest. People v. Brexton, 343 Ill. App. 3d 322, 326 (2003). "If a defendant makes a prima facie case, the State has the burden of going forward with evidence to counter the defendant's prima facie case." People v. Gipson, 203 Ill. 2d 298, 307 (2003). Here, the trial court ruled in the State's favor at the close of defendant's evidence. Accordingly, this court must

determine whether defendant made a prima facie case so as to shift the burden of going forward to the State. A ruling on a motion to quash an arrest and suppress evidence presents mixed questions of law and fact. People v. Lee, 214 Ill. 2d 476, 483 (2005). The circuit court's findings of historical fact will be upheld on review unless they are against the manifest weight of the evidence, but "a reviewing court remains free to undertake its own assessment of the facts in relation to the issues presented and may draw its own conclusions when deciding what relief should be granted." Lee, 214 Ill. 2d at 484. The ultimate question of whether to quash and suppress is reviewed de novo. Lee, 214 Ill. 2d at 484.

The first step in our analysis is to determine when defendant was seized within the meaning of the fourth amendment. For fourth amendment purposes, a person is seized when an officer, " 'by means of physical force or show of authority,' " restrains a citizen's liberty. Florida v. Bostick, 501 U.S. 429, 434, 115 L. Ed. 2d 389, 398, 111 S. Ct. 2382, 2386 (1991), quoting Terry v. Ohio, 392 U.S. 1, 19 n.16, 20 L. Ed. 2d 889, 905 n.16, 88 S. Ct. 1868, 1879 n.16 (1968). We believe that a fourth amendment seizure occurred when Officer Sciame pulled his unmarked squad car behind defendant's parked vehicle, thereby physically preventing the vehicle from moving and, as a result, preventing defendant from leaving the area without abandoning his vehicle. Cf. People v. Beverly, 364 Ill. App. 3d 361, 369-71 (2006) (defendant was seized when uniformed officer positioned marked squad car to block the exit of defendant's vehicle).

We next consider whether that seizure was constitutionally reasonable. In Terry, the United States Supreme Court held that the public interest in effective law enforcement makes it reasonable in some situations for law enforcement officers to temporarily detain and question individuals, notwithstanding the absence of probable cause for an arrest. Under Terry, a limited investigatory stop

is permissible where there exists a reasonable suspicion, based upon specific and articulable facts, that the person has committed or is about to commit a crime. Terry, 392 U.S. at 21-22, 20 L. Ed. 2d at 906, 88 S. Ct. at 1880. Whether an investigatory stop is reasonable is determined by an objective standard, and only facts known to the officer at the time of the stop may be considered. Village of Mundelein v. Thompson, 341 Ill. App. 3d 842, 848 (2003).

An investigatory stop need not be based on the officer's personal observation but may instead be based on information from members of the public. People v. Jackson, 348 Ill. App. 3d 719, 729 (2004). However, "[a]n informant's tip to police must bear some indicia of reliability to provide a sufficient basis for a Terry-type seizure." Thompson, 341 Ill. App. 3d at 850. "[A] reviewing court should consider the informant's veracity, reliability, and basis of knowledge." People v. Sparks, 315 Ill. App. 3d 786, 792 (2000).

There is no rigid test for determining whether an informant's tip will support an investigatory stop; rather, courts consider the totality of the circumstances. Thompson, 341 Ill. App. 3d at 850. Indicia of reliability include, inter alia, facts known to the officer that corroborate the tip. See Thompson, 341 Ill. App. 3d at 851. Corroboration is especially important when the informant is anonymous (Thompson, 341 Ill. App. 3d at 851) and is even more important when the anonymous tip is given by telephone rather than in person (see People v. Miller, 355 Ill. App. 3d 898, 902-03 (2005)). "However, when information comes from a named witness, it remains the case that a minimum of corroboration or other verification of the reliability of the information is required." Thompson, 341 Ill. App. 3d at 851. Corroboration of innocent details or of information that is readily known or knowable is of little value. See 4 W. LaFave, Search & Seizure §9.5(h), at 590-91 n.475 (4th ed. 2004) (and cases cited therein). On the other hand, a showing that an informant is able to

predict a defendant's future behavior lends credence to the tip. See, e.g., People v. Chavez, 327 Ill. App. 3d 18, 32 (2001). In addition, it is relevant whether the informant has a track record of providing reliable information in prior cases. Chavez, 327 Ill. App. 3d at 32.

Whether the information comes from an ordinary citizen or a paid informant is also germane to the inquiry. In the past, courts used this distinction as a shortcut to determining credibility and reliability. People v. Adams, 131 Ill. 2d 387, 397 (1989). Information from an ordinary citizen acting with the intent to aid police in law enforcement efforts was viewed as more credible than a tip from an informant giving the information for payment or other personal gain. Adams, 131 Ill. 2d at 397. Courts no longer employ rigid presumptions based on the distinction between citizen informants and paid informants. Adams, 131 Ill. 2d at 398. However, the distinction is still relevant in considering the totality of the circumstances. Adams, 131 Ill. 2d at 398.

Applying these principles here, we conclude that the police were entitled to conduct an investigatory stop. It is true that the tip that led to the investigatory stop did not come from a citizen informant motivated primarily by a desire to assist the police. Rather, the informant had recently been arrested and had reason to believe that supplying information to the police might redound to his benefit in any criminal proceedings against him. The tip may therefore be viewed as less reliable than it would have been if the informant had approached the police as a victim of a crime or as a civic-minded witness. Furthermore, there is no evidence that the informant had any history of providing reliable tips. Nonetheless, under the totality of the circumstances, there were substantial indicia of the informant's reliability. We first consider the basis of the informant's knowledge. The tip was based on a telephone conversation between defendant and the informant during which they arranged a drug transaction. Thus, the informant had a reliable basis for knowing that it was likely that

defendant would have illegal drugs in his possession at the appointed time and place for the transaction. More importantly, the telephone conversation took place in the presence of the police. Although the police were able to hear only the informant's side of the conversation, what they heard clearly pertained to a proposed drug transaction at a specified time and place. When the informant related the conversation to the police, his account was consistent with what the police were themselves able to hear. And when the police arrived at the location where the informant said the transaction was to take place, a vehicle matching the description given by the informant was there waiting. From its license plate, the police determined that the vehicle belonged to defendant. These circumstances strongly corroborated the informant's tip by (1) showing that the informant was able to predict defendant's future behavior and (2) substantiating that the other party to the informant's telephone call was, in fact, defendant.

Defendant relies on People v. Ertl, 292 Ill. App. 3d 863 (1997), in support of his argument that the police were not justified in conducting an investigatory stop based on the informant's tip. In Ertl, the defendant's estranged wife telephoned police and advised them that she and defendant had been involved in an altercation at her house. She indicated that the defendant was sitting in the driveway and would not leave. The defendant and his wife were in the midst of divorce proceedings. The defendant's wife had purchased the defendant's interest in the house, but the defendant was entitled to use a shed on the property for several more months. The defendant had come to the house to pick up his mail, and he inquired about something that was missing from the shed. The defendant's wife informed the police that the defendant owned several guns and that her father had previously found a loaded gun in the shed but had unloaded it. She also indicated that the defendant sometimes kept a weapon in his vehicle. She did not know whether the defendant had a weapon with him at that

time. The defendant drove away from the house and was stopped by the police based on his wife's description of the truck he was driving. After being stopped, the defendant consented to a search of his truck. A loaded pistol was found in the glove compartment, and the defendant was charged with unlawful use of a weapon. The trial court granted the defendant's motion to quash his arrest and suppress evidence. The State appealed, and this court affirmed.

This court reasoned that "[t]hough a degree of veracity or credibility would normally attach to the information provided by an identified citizen-informant, the information supplied here was based on limited and somewhat speculative observations and consisted largely of the informant's subjective fears." Ertl, 292 Ill. App. 3d at 873. This court noted that the "tenor" of the defendant's wife's call to the police "was preemptive and anticipatory and did not impart the type of urgency that would arise from witnessing a crime in progress and thereby suggest a greater degree of reliability." Ertl, 292 Ill. App. 3d at 873. Moreover, this court concluded that "[t]he quality and the factual basis of the knowledge provided the police were insufficient to warrant the stop," because the defendant had gone onto his wife's property legally and the information bearing on whether the defendant was carrying a weapon was speculative. Ertl, 292 Ill. App. 3d at 873-74. This case bears no meaningful resemblance to Ertl. Whereas the informant in Ertl could only speculate whether the defendant had committed or was about to commit a crime, here the informant arranged an illegal transaction with the defendant, which was to take place at a specified time and location. Thus, the tip given here was by no means speculative.

Defendant contends that even if the investigatory stop was initially valid, it quickly developed into an unlawful arrest. Defendant maintains that he was under arrest at the point that the police placed him in handcuffs. According to defendant, even if the police had sufficient reliable information

to conduct an investigatory stop, they lacked probable cause to arrest him. Defendant insists that the evidence collected after his unlawful arrest should have been excluded unless the collection of the evidence was sufficiently attenuated from the illegality.

The fact that police officers place an individual in handcuffs does not necessarily transform an investigatory stop into an arrest (People v. Walters, 256 Ill. App. 3d 231, 237 (1994)), but when arrest-like measures (such as handcuffing) are employed, they must be " 'reasonable in light of the circumstances that prompted the stop or that developed during its course.' " 4 W. LaFave, Search & Seizure §9.2(d), at 304 (4th ed. 2004), quoting United States v. Acosta-Colon, 157 F.3d 9, 15 (1st Cir. 1998). At least one court has suggested that risks inherent in interdicting drug traffic may warrant the use of handcuffs in investigatory stops involving motor vehicles. People v. Waddell, 190 Ill. App. 3d 914, 927 (1989). In this case, however, it is unnecessary to decide whether placing defendant in handcuffs constituted an arrest. Before that occurred, a police officer approached defendant's vehicle. When defendant rolled down the window, the officer detected a "fresh cannabis smell" coming from the vehicle. At that point, given all the other circumstances known to the officer, there was probable cause to arrest defendant. See People v. Faucett, 442 Mich. 153, 156 n.3, 499 N.W.2d 764, 767 n.3 (1993) (police officer's detection of odor of fresh marijuana, through open window of vehicle, supplied probable cause for search that resulted in the discovery of approximately four ounces of marijuana). Thus, even if defendant was under arrest when he was placed in handcuffs, the arrest was not unlawful.

For the foregoing reasons, the judgment of the circuit court of McHenry County is affirmed.

Affirmed.

McLAREN and HUTCHINSON, JJ., concur.