2011 UT App 111

**SALT LAKE CITY, a municipal corporation on behalf of the State of Utah, Plaintiff and Appellee,**

v.

**Keith STREET, Defendant and Appellant.**

No. 20100203–CA.

Court of Appeals of Utah.

April 14, 2011.

Richard P. Mauro, Salt Lake City, for Appellant.

Ryan P.C. Stack and Joshua N. Graves, Salt Lake City, for Appellee.

Before Judges DAVIS, ORME, and THORNE.

## OPINION

DAVIS, Presiding Judge:

¶ 1 Keith Street appeals from his conviction for driving under the influence of alcohol (DUI), arguing that the trial court erred by denying his motion to suppress evidence. We affirm.

## BACKGROUND

¶ 2 On the evening of July 17, 2008, a Salt Lake City police officer was working on a foot patrol assignment in Liberty Park. While the officer was on patrol, a woman with children approached him. She informed him that there was an individual "passed out" in his vehicle in the park and that she believed the individual was intoxicated. She informed the officer that "[s]he was concerned because there was a child in the vehicle and she didn't want a person that . . . she believed was intoxicated to drive with the child in the car with him." She described the vehicle and its location in the park.

¶ 3 The officer approached the vehicle and confirmed that both the vehicle and its occupants matched the descriptions given by the woman. As the officer approached, the vehicle pulled out and passed him, and he flagged it down. The officer did not witness any erratic driving. He spoke with the driver, Street, through the open window. The officer testified that he could smell alcohol, that Street's eyes were bloodshot, and that Street was "acting as if he was intoxicated." After encountering Street, the officer contacted other on-duty officers to conduct field sobriety tests. Street was eventually arrested and charged with DUI.

¶ 4 Street filed a motion to suppress evidence of everything that occurred after the officer stopped Street, including the field sobriety and chemical tests, on the ground that the officer lacked a reasonable suspicion sufficient to stop Street's vehicle. The trial court denied Street's motion to suppress, concluding that the woman's information was sufficient to support a reasonable suspicion. Subsequently, Street entered a conditional guilty plea, *see generally State v. Sery,* 758 P.2d 935, 939 (Utah Ct.App.1988), preserving his right to appeal the trial court's ruling on

the motion to suppress. He was sentenced to a suspended jail term of 365 days, placed on probation for eighteen months, and assessed a fine. Street now appeals.

## ISSUE AND STANDARD OF REVIEW

¶ 5 Street argues that the trial court erred by denying his motion to suppress because the woman's tip was insufficient to support a reasonable suspicion of DUI. In reviewing motions to suppress evidence in search and seizure cases, we review the trial court's application of the law to underlying factual findings nondeferentially for correctness. *See State v. Brake,* 2004 UT 95, ¶ 15, 103 P.3d 699.

## ANALYSIS

¶ 6 The protections of the Fourth Amendment " 'extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest.' " *State v. Roybal,* 2010 UT 34, ¶ 14, 232 P.3d 1016 (quoting *United States v. Arvizu,* 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002)). Such stops are permissible where the officer has a "reasonable, articulable suspicion that the person has been, is, or is about to be engaged in criminal activity." *Id.* (internal quotation marks omitted). "Reasonable suspicion ... is dependent upon both the *content of information* possessed by police and its *degree of reliability.* Both factors—quantity and quality—are considered in the totality of the circumstances ... that must be taken into account when evaluating whether there is reasonable suspicion." *Alabama v. White,* 496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990) (emphases added) (citation and internal quotation marks omitted).

¶ 7 "It is well-established in this state that the articulable facts supporting reasonable suspicion may come from ... external information such as an informant's tip...." *State v. Kohl,* 2000 UT 35, ¶ 13, 999 P.2d 7 (emphasis omitted). In *Kaysville City v. Mulcahy,* 943 P.2d 231 (Utah Ct.App.1997), we articulated a three-factor framework for analyzing whether an informant's tip provides a reasonable suspicion to support a stop. *See id.* at 235–36. This framework was "gleaned from Utah cases" on the subject, *id.* at 235, and reflects the general rule that "[i]n reviewing the totality of the circumstances ..., we consider both the content of the information and its reliability," *State v. Humphrey,* 937 P.2d 137, 142 (Utah Ct.App. 1997); *accord White,* 496 U.S. at 330, 110 S.Ct. 2412. The three *Mulcahy* factors are (1) the reliability of the informant, (2) the detail of the information, and (3) corroboration of the tip by the officer's own observations. *See Mulcahy,* 943 P.2d at 235–36.

¶ 8 Street argues that the woman in this case was not a reliable informant because she did not identify herself by name and the officer did not request any personal information from her. He further argues that the information provided by the woman was not sufficiently detailed because she did not explain to the officer why she believed Street was intoxicated. Finally, he argues that due to the weakness of these two factors, police corroboration of facts suggesting that he was intoxicated was necessary to support a reasonable suspicion.

¶ 9 The first two factors, if established, may alone be sufficient to support a reasonable suspicion, so long as they are not contradicted by the officer's personal observations. *See Roybal,* 2010 UT 34, ¶¶ 14 n. 2, 20–21, 232 P.3d 1016 (holding that an officer had a reasonable suspicion to pull over a suspected drunk driver based solely on information provided by his girlfriend despite the fact that the officer had not made observations specifically corroborating the girlfriend's report); *Mulcahy,* 943 P.2d at 236 (suggesting that where an informant's information regarding an intoxicated driver is sufficient to create a reasonable suspicion, it is more important for an officer to stop a suspect before an accident occurs than for the officer to corroborate the tip by waiting to personally observe the suspicious behavior). In determining whether the content of the information and its degree of reliability are sufficient to support a reasonable suspicion, the two factors should be analyzed together rather than in isolation. *See State v. Alverez,* 2006 UT 61, ¶ 14, 147 P.3d 425 ("When determining whether police officers had a reasonable and articulable suspicion, courts may not

use a divide-and-conquer analysis." (internal quotation marks omitted)); *see also Roybal,* 2010 UT 34, ¶ 14 n. 2, 232 P.3d 1016. "Thus, if a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable." *White,* 496 U.S. at 330, 110 S.Ct. 2412; *see also Salt Lake City v. Bench,* 2008 UT App 30, ¶¶ 18–20, 177 P.3d 655 (reasoning that the amount of detail required to support a reasonable suspicion depends, at least in part, on the reliability of the informant).

¶ 10 We have previously referred to a "reliability scale" in assessing the reliability of an informant. *See Mulcahy,* 943 P.2d at 235. Whether the informant is identified and whether the informant is a disinterested "citizen-informant" are the major factors affecting where a particular informant falls on the reliability scale. *See id.* Thus, "an identified 'citizen-informant' is high on the reliability scale." *Id.; see also Bench,* 2008 UT App 30, ¶ 15, 177 P.3d 655 ("Because a citizen-informant volunteer[s] information out of concern for the community and not for personal benefit, and because the informant is exposed to possible criminal and civil prosecution if the report is false, a tip from an identified citizen-informant is generally considered highly reliable." (alteration in original) (citations and internal quotation marks omitted)). On the other hand, "anonymous tips are toward the low-end of the reliability scale." *Mulcahy,* 943 P.2d at 235.

¶ 11 "Anonymous" and "unidentified" are not entirely synonymous in this context. An anonymous tip lacks not only specific identification of the informant, such as a name or contact information, but is also generally devoid of other facts that might indicate the tipster's veracity. *See People v. Martinez,* 200 P.3d 1053, 1058 (Colo.2009) (en banc) ("[A] truly anonymous tip is one not only where the caller fails to provide his or her name, [but where he] has no known prior record of providing information, ... there is nothing to suggest that the caller was a citizen informant, [and] ... nothing in the tip indicates that the caller is an unaffiliated bystander contemporaneously witnessing

criminal activity."). By contrast, tipsters who are merely unidentified may still be considered highly reliable if the facts indicate that they are citizen-informants. *See State v. Miller,* 740 P.2d 1363, 1366 (Utah Ct.App. 1987) (assuming the veracity of "unidentified informant neighbors" because "the average neighbor witness is not the type of informant in need of independent proof of reliability or veracity" but is rather an "average citizen who is in a position to supply information by virtue of having been a crime victim or witness" (internal quotation marks omitted)).

¶ 12 Although the woman in this case was not identified, she was not truly anonymous because the circumstances indicate that she was a reliable citizen-informant. She approached the officer in a public park with her children. She sought nothing in return for her information, and her stated concern was for the safety of the public and the child in Street's car. *See generally Kaysville City v. Mulcahy,* 943 P.2d 231, 235 (Utah Ct.App. 1997) ("[C]itizen informers ... volunteer information out of concern for the community and not for personal benefit."). The woman made no suggestion that she had obtained the information from a third party or that she had not personally observed Street. *See generally id.* at 236 ("A tip is more reliable if it is apparent that the informant observed the details personally, instead of simply relaying information from a third party."). Furthermore, even though the woman was not identified by name, she made no attempt to hide her identity, and her face-to-face encounter with the officer "place[d] her] anonymity at risk" and exposed her to the possibility of future identification. *See Florida v. J.L.,* 529 U.S. 266, 276, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000) (Kennedy, J., concurring); *see also People v. Lucero,* 182 Colo. 39, 511 P.2d 468, 470 (1973) (en banc) (holding that police had a reasonable suspicion to pull over a robbery suspect based on unidentified witnesses' description of the getaway vehicle); *State v. Satter,* 2009 SD 35, ¶¶ 1, 10–12, 17, 21, 766 N.W.2d 153, 154, 156–58 (holding that where a "concerned citizen" approached an officer face-to-face, making "no effort to hide or conceal his identity," and informed him that he had seen two men drinking beer in a

van, the officer had a reasonable suspicion to pull the van over even though he did not witness any erratic driving); *Mitchell v. State*, 187 S.W.3d 113, 117–18 (Tex.App.2006) (holding that an unidentified citizen-informant's report of an intoxicated driver could support a reasonable suspicion because it contained " 'sufficient indicia of reliability,' " including, "most importantly," the fact that his face-to-face encounter with the officer "placed him[ ] in a position to be easily identified by [the officer] and held accountable for his report"); *cf. People v. Tooks*, 403 Mich. 568, 271 N.W.2d 503, 504, 508 (1978) (holding that information about a suspect with a concealed weapon, received from a citizen who approached police face-to-face but refused to identify himself for fear of " 'gangs in the area,' " supported a reasonable suspicion for a weapons frisk). *But see State v. Tibbet*, 96 Or.App. 116, 771 P.2d 654, 654–55 (1989) (in banc) (holding that an unidentified driver who pulled off the road to inform a police officer of "a vehicle [that] had been 'driving all over the road' in front of him" was "just as anonymous" as an unidentified telephone informant). Thus, while not on the peak end of the reliability scale because she remained unidentified, although identifiable, the woman in this case was still highly reliable. Her status as a disinterested citizen-informant suggests trustworthiness, *see Miller*, 740 P.2d at 1366, and the fact that she encountered the officer face-to-face undercuts any adverse implication her lack of actual identification had on her reliability.

¶ 13 As to the second *Mulcahy* factor, although the woman did not provide extensive detail regarding the suspected criminal activity, the detail she did provide was sufficient to support a reasonable suspicion. In the context of reporting a drunk driver, detailed information is generally not required. *See Mulcahy*, 943 P.2d at 237 (holding that a statement from a citizen-informant that a " 'drunk individual' " had recently left his home driving what looked like a white Toyota in a particular direction was sufficient information to support a reasonable suspicion). " '[M]embers of the general public have a common knowledge about whether a person is under the influence of alcohol,' " *id.* (quoting *State v. Bybee*, 131 Or.App. 492, 884 P.2d

906, 909 (1994)), so the woman did not need to specifically explain to the officer why she believed Street was intoxicated. While additional information would certainly have strengthened the woman's report, *see State v. Roybal*, 2010 UT 34, ¶ 20, 232 P.3d 1016, and it was conceded by the City at oral argument that the better practice would have been for the officer to inquire after such information, a conclusory statement by a citizen-informant that a driver is intoxicated may be sufficient to support a reasonable suspicion of criminal activity, *see Mulcahy*, 943 P.2d at 237. Therefore, although the detail provided by the woman was limited, it was sufficient to support a reasonable suspicion that Street was intoxicated, particularly when considered in view of the fact that she was a reliable citizen-informant. *See generally Alabama v. White*, 496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990) (explaining that less detail is needed when the informant is highly reliable); *Bench*, 2008 UT App 30, ¶¶ 18–20, 177 P.3d 655 (same).

¶ 14 While the existence of the third *Mulcahy* factor, police corroboration, is not necessary to support a reasonable suspicion, it is relevant to the extent that it strengthens or weakens either the reliability of the tipster or the content of the tipster's information. *Cf. Roybal*, 2010 UT 34, ¶ 14 n. 2, 232 P.3d 1016 (suggesting that a report from an informant that was independently sufficient to create a reasonable suspicion could be undermined by an officer's observations inconsistent with that report); *State v. Roth*, 827 P.2d 255, 258 (Utah Ct.App.1992) (holding that observations by police that the suspect " 'was having a hard time driving' and that he was driving 'slow and jerky' " strengthened the officer's reasonable suspicion based on an informant's tip). Thus, this factor should be analyzed in concert with the other two factors to complete the totality of the circumstances assessment.

¶ 15 Although the officer did not personally witness any actions by Street, such as erratic driving, that would suggest criminal activity, his observations were not inconsistent with the woman's report, which was sufficiently detailed and reliable to sup-

port a reasonable suspicion on its own. Furthermore, the fact that the officer discovered the vehicle in the location pointed out by the woman and observed that the vehicle's occupants matched the woman's descriptions enhanced the reliability of her account.[1] *See generally Mulcahy*, 943 P.2d at 236 ("The officer may corroborate the tip either by observing the illegal activity or by finding the person, the vehicle and the location substantially as described by the informant." (internal quotation marks omitted)). Thus, under the totality of the circumstances, the woman's report gave the officer a reasonable suspicion to stop Street and investigate him for DUI.

### CONCLUSION

¶ 16 The woman in this case, although unidentified, was a highly reliable citizen-informant. Furthermore, because citizens are generally assumed to be capable of recognizing intoxication, the woman's report that she believed Street to be intoxicated was sufficiently detailed, even though she did not volunteer the reasoning behind her belief. The officer's personal observations were consistent with the woman's account, and his corroboration of her physical descriptions strengthened her basic reliability. Therefore, the totality of the circumstances supports the existence of a reasonable suspicion, and we affirm the trial court's denial of Street's motion to suppress.

¶ 17 WE CONCUR: GREGORY K. ORME and WILLIAM A. THORNE JR., Judges.

---

1. Although the officer noticed that Street's eyes were bloodshot and smelled alcohol on Street's breath after the officer stopped the vehicle, these corroborative observations are not relevant to the totality of the circumstances analysis here because they did not occur until after the vehicle was seized.