# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Sanders*, 2013 IL App (1st) 102696

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DETERTORING SANDERS, Defendant-Appellant. |
| District & No. | First District, Fourth Division<br>Docket No. 1-10-2696 |
| Filed | February 14, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The denial of defendant's motion to quash his arrest and suppress the machine gun discovered in the backseat of his car was upheld, notwithstanding his contention that there were no specific and articulable facts justifying a *Terry* stop, since the arresting officer acted on information provided by a woman who flagged him down and said that she had just seen a man put a machine gun in his car, and although she did not identify herself, she described defendant and the car he was driving and the officer's face-to-face encounter with the woman allowed him to describe her, evaluate her demeanor, trustworthiness and reliability, and reasonably infer that defendant was involved in criminal activity that justified a *Terry* stop. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 08-CR-19852; the Hon. John A. Wasilewski, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on      Michael J. Pelletier, Alan D. Goldberg, and Christopher Kopacz, all of
Appeal           State Appellate Defender's Office, of Chicago, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Eve
Reilly, and Whitney Bond, Assistant State's Attorneys, of counsel), for
the People.

Panel           JUSTICE EPSTEIN delivered the judgment of the court, with opinion.
Presiding Justice Lavin and Justice Pucinski concurred in the judgment
and opinion.

## OPINION

¶ 1      After a bench trial, defendant Detertoring Sanders was convicted of the offense of armed habitual criminal and sentenced to 10 years in prison. Defendant appeals contending that the trial court erred in denying his motion to quash arrest and suppress evidence because there were no specific and articulable facts to justify a stop pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968). For the reasons that follow, we affirm.

¶ 2      At the hearing on defendant's motion to quash arrest and suppress evidence, Officer John Dolan testified that he was on patrol in the vicinity of Normal Avenue and 79th Street in Chicago when he was flagged down by a woman. He described this woman, whom he had not met before, as black, about 5 feet 5 inches tall and "heavy set." She was wearing black clothes. During their approximately 15-second conversation, the woman told Dolan that she had seen a short black man, aged 30 to 35 years old, wearing a red coat and blue pants put a machine gun into the backseat of a Chrysler with the license plate A739050. She also indicated that the Chrysler was gold or brown and traveling north on Halsted Street. After speaking to this person, Dolan relocated to 7401 South Halsted Street, approximately a mile away.

¶ 3      Two to three minutes later, Dolan saw a Chrysler, driven by defendant, stopped at a light at the intersection of 74th and Halsted. Dolan and fellow officers then placed their vehicles in the front and back of the Chrysler, and defendant was asked to exit the car. As defendant was being taken out of the car, Officer Wagner yelled "gun." Officer Triantafillo[1] then recovered a machine gun from the car.

¶ 4      At the time that the car was pulled over, Dolan did not have either an arrest warrant for defendant or a search warrant for the Chrysler. He did not see defendant violate any traffic laws.

---

[1]This officer's name is also spelled "Friantafillo" in the record.

¶ 5        Officer Joseph Wagner testified that he and his partner assisted in the stop of the Chrysler based upon information provided over the radio by Dolan. As he approached the Chrysler, he saw defendant sitting inside. He also saw a large black "AR150-type" machine gun in the backseat of the car. He yelled "gun" and ordered defendant out of the car.

¶ 6        In denying the motion, the trial court stated that the citizen who spoke to Dolan had first-hand knowledge of the gun and had provided a specific description of defendant to the officers.

¶ 7        The matter then proceeded to a bench trial. Officer Wagner testified consistently with his testimony at the suppression hearing. He further testified that the two squad cars were positioned around the Chrysler in order to avoid a car chase. When Wagner exited the squad car, he drew his weapon and announced his office as he approached the Chrysler. Wagner saw defendant raise his hands. He also saw a large machine gun located two to three feet away from defendant on the rear bench seat of the car. The gun had a scope, an infrared laser, and a magazine containing 10 rounds. A bag recovered from the car contained two additional magazines.

¶ 8        Defendant was taken into custody and transported to a police station. During a subsequent conversation defendant told Wagner that Clifton "Flex" Hall had paid him $15 to drive the Chrysler from one location to another. Wagner later learned that the Chrysler was registered to Hall.

¶ 9        Ultimately, the trial court found defendant guilty of the offense of armed habitual criminal and sentenced him to 10 years in prison.

¶ 10       Before reaching the merits of defendant's appeal, this court must address the State's argument that defendant forfeited this issue by failing to include it in a posttrial motion. See *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). Defendant concedes that he failed to raise this issue in his posttrial motion and asks this court to review the issue pursuant to the plain error doctrine. In the alternative, defendant contends that he was denied effective assistance of counsel by trial counsel's failure to include this issue in a posttrial motion.

¶ 11       Pursuant to the plain error doctrine, this court may address unpreserved errors "when either (1) the evidence is close, regardless of the seriousness of the error, or (2) the error is serious, regardless of the closeness of the evidence." *People v. Herron*, 215 Ill. 2d 167, 186-87 (2005). The first step in determining whether the plain error doctrine applies is to determine whether any reversible error occurred (*People v. Patterson*, 217 Ill. 2d 407, 444 (2005)), as without reversible error there can be no plain error (*People v. Williams*, 193 Ill. 2d 306, 349 (2000)).

¶ 12       When reviewing a trial court's suppression ruling, this court applies a two-part standard of review. *People v. Luedemann*, 222 Ill. 2d 530, 542 (2006). The trial court's factual findings and credibility determinations are entitled to great deference and will be reversed only if they are against the manifest weight of the evidence. *People v. Slater*, 228 Ill. 2d 137, 149 (2008). However, the trial court's ultimate legal ruling as to whether suppression was warranted is reviewed *de novo*. *People v. Cosby*, 231 Ill. 2d 262, 271 (2008). *De novo* review is also appropriate in cases, such as the case at bar, when "the facts and witness credibility are not in dispute." *People v. Roberts*, 374 Ill. App. 3d 490, 495 (2007).

¶ 13    The fourth amendment to the United States Constitution guarantees the right of the people to be free from unreasonable searches and seizures. *People v. Gherna*, 203 Ill. 2d 165, 176 (2003). Reasonableness under the fourth amendment generally requires a warrant supported by probable cause. *People v. Sorenson*, 196 Ill. 2d 425, 432 (2001). However, in *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968), the Supreme Court recognized a limited exception to this requirement which allowed police officers, under appropriate circumstances, to briefly stop a person for temporary questioning when the officer reasonably believed that the person had committed or was about to commit a crime. A vehicle stop, as in this case, is analogous to a *Terry* stop and is generally analyzed pursuant to *Terry* principles. *People v. Jones*, 215 Ill. 2d 261, 270 (2005).

¶ 14    To justify a *Terry* stop, a police officer must be able to point to specific and articulable facts which, combined with the rational inferences from those facts, reasonably warrant the intrusion. *People v. Thomas*, 198 Ill. 2d 103, 109 (2001). While these facts need not rise to the level of probable cause, a mere hunch is not sufficient. *Thomas*, 198 Ill. 2d at 110. Whether an investigatory stop is reasonable is determined by an objective standard (*People v. Nitz*, 371 Ill. App. 3d 747, 751 (2007)), and the facts are viewed from the perspective of a reasonable officer at the time of the stop (*Thomas*, 198 Ill. 2d at 110). A reviewing court "must 'be mindful that the decision to make an investigatory stop is a practical one based on the totality of the circumstances.' " *People v. Harris*, 2011 IL App (1st) 103382, ¶ 11 (quoting *In re S.V.*, 326 Ill. App. 3d 678, 683 (2001)).

¶ 15    A *Terry* stop may be initiated based upon information received from a member of the public. *Nitz*, 371 Ill. App. 3d at 751. Because not all tips are created equal, "a reviewing court should consider the informant's veracity, reliability, and basis of knowledge" when analyzing a tip. *People v. Sparks*, 315 Ill. App. 3d 786, 792 (2000). Ordinarily information from a "concerned citizen" is considered more credible than information from a paid informant or a person who provided the information for personal gain. *People v. Linley*, 388 Ill. App. 3d 747, 750 (2009). See also *People v. Jones*, 374 Ill. App. 3d 566, 574 (2007) (generally the reliability of an ordinary citizen, unlike that of an informant, need not be established, and, absent an indication to the contrary, information provided by an ordinary citizen is presumed to be reliable); but see *People v. Smulik*, 2012 IL App (2d) 110110, ¶ 8 (where there was no evidence that the tipster contacted the police through an emergency number or provided a name, the tip must be considered anonymous, "and its reliability hinges on the existence of corroborative details observed by the police"). However, even when the information comes from an identified informant, some corroboration or other verification of the reliability of the information is required. *Linley*, 388 Ill. App. 3d at 75 (finding "some authority" for the application of a less rigorous standard of corroboration when the tip concerns an imminent threat to public safety). A tip providing predictive information and readily observable details will be deemed more reliable if these details are confirmed or corroborated by the police. *People v. Allen*, 409 Ill. App. 3d 1058, 1072 (2011).

¶ 16    At issue in this case is whether a police officer's 15-second conversation with an unidentified woman, during which the woman stated that she had seen a man place a machine gun into a car and described the man, the car and the car's trajectory, provided reasonable suspicion to stop the car that defendant was driving when the officers only

corroborated "innocent" details of the tip, *i.e.*, the make and color of the car, the license plate, and the direction of travel before effectuating a stop.

¶ 17    In *Florida v. J.L.*, 529 U.S. 266, 268 (2000), the police received an anonymous telephone call reporting that "a young black male standing at a particular bus stop and wearing a plaid shirt was carrying a gun." When officers arrived at the bus stop six minutes later, they saw three black males, one of whom, J.L., was wearing a plaid shirt. J.L. made no threatening or unusual movements and the officers could not see a firearm. Nevertheless, based upon the anonymous tip, one of the officers searched J.L. and recovered a gun.

¶ 18    Ultimately, the Supreme Court determined that the search was an invalid *Terry* stop because the anonymous tip did not contain the indicia of reliability required to provide the officer with reasonable suspicion that J.L. was carrying a gun. *J.L.*, 529 U.S. at 272-74. The Court noted that "[a]ll the police had to go on *** was the bare report of an unknown, unaccountable informant who neither explained how he knew about the gun nor supplied any basis for believing he had inside information." *J.L.*, 529 U.S. at 271. The Court then explained that where an informant's tip, rather than police observation, served as the basis of an investigatory stop, the tip must exhibit a sufficient indicia of reliability to provide reasonable suspicion to make a stop. *J.L.*, 529 U.S. at 270; see also *Alabama v. White*, 496 U.S. 325, 327, 332 (1990) (in a "close call," the Court determined there was sufficient corroboration of an anonymous tip to justify a *Terry* stop when police received an anonymous telephone tip stating that "Vanessa White would be leaving 235–C Lynwood Terrace Apartments at a particular time in a brown Plymouth station wagon with the right taillight lens broken, that she would be going to Dobey's Motel, and that she would be in possession of about an ounce of cocaine inside a brown attaché case" and the police then went to the apartment building, saw a vehicle matching the description, observed a woman leave the building and enter the vehicle, followed the vehicle as it drove toward the motel, and stopped it shortly before the motel).

¶ 19    The Court recognized that along the spectrum upon which tips are classified, there is a difference between an anonymous tip and one from a known informant whose reputation can be ascertained and who can be held accountable if a tip turns out to be fabricated. *J.L.*, 529 U.S. at 270. In those instances when an "informant places his anonymity at risk, a court can consider this factor in weighing the reliability of the tip." *J.L.*, 529 U.S. at 276 (Kennedy, J., concurring, joined by Rehnquist, C.J.).

¶ 20    In his concurring opinion, Justice Kennedy highlighted those cases where "a tip might be considered anonymous but nevertheless sufficiently reliable to justify a proportionate police response [such as] when an unnamed person driving a car [that] the police officer later describes stops for a moment and, face to face, informs the police that criminal activity is occurring." *J.L.*, 529 U.S. at 276 (Kennedy, J., concurring, joined by Rehnquist, C.J.). Tips which provide specific details or predictions of future actions are also placed "higher" on the reliability scale because they suggest that the tipster has knowledge that is not available to the general public. *White*, 496 U.S. at 332. Between the two extremes is a sliding scale. In other words, "if a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip was more reliable." *White*, 496 U.S. at 330. The reliability of any given informant's tip as it

relates to a reasonable-suspicion analysis must be determined in a case-by-case basis. See, *e.g.*, *United States v. Torres*, 534 F.3d 207, 211 (3d Cir. 2008) (factors to consider when assessing a tip's reliability include whether: (1) the information was relayed to the officer in a face-to-face interaction during which the officer had an opportunity to assess the informant's credibility through observation; (2) the person providing the tip can be held responsible if the allegations turn out to be fabricated; (3) the content's tip is not information that would be available to anyone; (4) the person providing the information recently witnessed the alleged criminal activity; and (5) the tip is predictive).

¶ 21 The Sixth Circuit, for example, has distinguished between "anonymous tips provided over the telephone and those given face-to-face with a police officer." *Henness v. Bagley*, 644 F.3d 308, 318 (6th Cir. 2011). There, an unidentified person approached a police officer on the street and stated that a white man in a green trench coat had just threatened to shoot him. When the officer went to investigate the alleged incident, he observed a white man in a green trench coat walking toward him, so he stopped this person, later identified as the defendant, performed a pat down and recovered a knife. In analyzing the tip, the court determined that an in-person tip gives the officer an opportunity to observe the informant's demeanor and credibility and places the person making the tip at risk of being held accountable for sharing false information. *Henness*, 644 F.3d at 318. The *Henness* court also found that "an in-person informant's proximity in time and space to the reported criminal activity indicates the reliability of the tip, because it reflects that the informant acquired the information firsthand." *Henness*, 644 F.3d at 318. Ultimately, the court determined that an officer may rely on a "complaint made by an individual whose name the officer does not know, but who made the complaint in open view of the officer." *Henness*, 644 F.3d at 318.

¶ 22 However, that is not to say that every in-person tip has the indicia of reliability such that it is a sufficient basis upon which to base a *Terry* stop. *People v. Rhinehart*, 2011 IL App (1st) 100683, is instructive. There, a police officer was flagged down by a woman who stated that an African-American man on a certain block had a gun. She said that this man was wearing a white shirt and yellow pants. The officer went to the address, which was in a high-crime location, and observed the defendant, who matched the description of the individual with a gun. The officer identified himself, conducted a pat down search of the defendant, and recovered a gun. On appeal, the defendant contended, *inter alia*, that the tip provided by the citizen informant was not sufficiently reliable to provide the officer with a reasonable suspicion of criminal activity because the informant was effectively anonymous and the uncorroborated tip did not establish the basis of the informant's knowledge.

¶ 23 Initially, the court determined that the tip at issue differed from the tip in *J.L.* because the tip was provided in person, which permitted the officer to develop an initial impression of the woman's credibility from her physical appearance and tone of voice. *Rhinehart*, 2011 IL App (1st) 100683, ¶ 14. However, the court could not determine, based on the record, whether the officer believed the informant. Although the officer testified as to the content of the tip, he was not questioned regarding his observations of the informant or the reasons that he believed the tip was reliable. *Rhinehart*, 2011 IL App (1st) 100683, ¶ 15. The court noted that the informant did not indicate how she knew of the criminal activity or predict the defendant's future actions. *Rhinehart*, 2011 IL App (1st) 100683, ¶ 15. Further, because the

officers did not know the informant's identity, it would have been difficult to locate her if the tip had been fabricated. *Rhinehart*, 2011 IL App (1st) 100683, ¶ 16.

¶ 24    In reaching its determination that the tip was not sufficiently reliable as to justify a *Terry* stop, the court distinguished its previous decision in *People v. Miller*, 355 Ill. App. 3d 898, 902-04 (2005), as the unidentified informant in *Miller* stated that he had seen the person display the handgun and he could have been traced in the event the tip was fabricated because he was only one-eighth of a mile from the location of the stop. However, in *Rhinehart*, the record did not contain evidence indicating that the informant had seen the gun or establishing the distance between the tip and the *Terry* stop. *Rhinehart*, 2011 IL App (1st) 100683, ¶¶ 18-19. See also *People v. Henderson*, 2012 IL App (1st) 101494, ¶¶ 9, 12, *appeal granted*, No. 114040 (Ill. May 30, 2012) (following *Rhinehart* with regard to the initial stop, before determining that because defendant escaped police custody, he was not seized, within the meaning of the fourth amendment, at the time that he dropped the gun he sought to suppress).

¶ 25    Although defendant is correct that Dolan did not obtain the identifying details of the woman who flagged him down, this court is not persuaded by defendant's reliance on *J.L.* and *Rhinehart*. In *J.L.*, the tip was given anonymously over the phone and the informant did not explain how he knew of the gun or give any basis for his "inside" information. *J.L.*, 529 U.S. at 268, 271. In *Rhinehart*, although the informant spoke to an officer in person, she did not accurately predict the defendant's behavior or explain how she knew of his criminal behavior. *Rhinehart*, 2011 IL App (1st) 100683, ¶ 14. The informant in this case, on the other hand, spoke to Dolan in person, explained the basis of her knowledge, and accurately described defendant's direction of travel.

¶ 26    While defendant is certainly correct that the informant in this case remains unidentified, this court rejects defendant's assertion that Dolan acted based upon an "anonymous" tip. Although this woman was not a known informant whose reputation could be verified, she placed her anonymity at risk by speaking to Dolan who, for all she knew, might ask her name. This may be considered when weighing the reliability of the tip. See *J.L.*, 529 U.S. at 276 (Kennedy, J., concurring, joined by Rehnquist, C.J.).

¶ 27    *Salt Lake City v. Street*, 2011 UT App 111, 251 P.3d 862, is instructive. There the court determined that an unidentified woman who approached a police officer in public, made no attempt to hide her identify, and sought nothing in return for certain information more closely resembled a reliable citizen informant than an anonymous tipster.

¶ 28    In that case, a police office was approached by a woman who told him that there was an individual, whom she believed to be intoxicated, passed out in a car. The woman then described the vehicle and its location and indicated she was concerned because there was a child in the car. The officer subsequently located a car matching the description. As he approached the car, he observed the vehicle pull out and drive by. Although the officer did not witness any erratic driving, he flagged the vehicle over. While speaking to the defendant through an open car window, the officer smelled alcohol and saw the defendant's bloodshot eyes. The defendant was later taken into custody. After the defendant's motion to suppress was denied and he entered a conditional plea of guilty to driving under the influence of

alcohol, he argued on appeal that the woman was not a reliable informant because she did not identify herself or explain why she believed he was intoxicated and the officer did not request her contact information.

¶ 29        Initially, the court noted that major factors determining where an informant fell on the "reliability scale" included whether the person was identified and whether the person was a disinterested citizen informant. *Street*, 2011 UT App 111, ¶ 10, 251 P.3d 862. The court then examined the difference between an "anonymous" informant and one who is "unidentified." An "anonymous tip" lacked not only information identifying the informant, but generally also lacked facts that would indicate the informant's veracity; an "unidentified" informant, on the other hand, may be considered "highly reliable" if the facts indicate that he or she is a citizen informant. *Street*, 2011 UT App 111, ¶ 10, 251 P.3d 862. Turning to the case at bar, the court noted that although the woman was not identified, she was not "truly anonymous" because the facts indicated that she was a reliable citizen informant, *i.e.*, she approached the officer in a public park, she sought nothing in return for the information, and she acted out of concern for the child in the car. *Street*, 2011 UT App 111, ¶ 12, 251 P.3d 862. Although the woman was not identified, she did not attempt to hide her identity and her face-to-face encounter with the officer placed her anonymity at risk and exposed her to the possibility of future identification. *Street*, 2011 UT App 111, ¶ 12, 251 P.3d 862. Therefore, while this woman was not at the "peak" of the reliability scale, she was still highly reliable because her status as a disinterested citizen informant suggested trustworthiness; the fact that she interacted with the officer face-to-face undercut any "adverse implication" the lack of identification had upon her reliability. *Street*, 2011 UT App 111, ¶ 12, 251 P.3d 862.

¶ 30        Similarly, in *D.P. v. State*, 65 So. 3d 123 (Fla. Dist. Ct. App. 2011), the court determined that a young woman who approached a police officer yelling that the defendant had just pointed a gun at her had a greater resemblance to a citizen informant than an anonymous tipster because she did not "simply make an anonymous phone call." *D.P.*, 65 So. 3d at 128. Rather, she provided the information during a face-to-face encounter with an officer in the presence of the defendant, thus giving the officer the opportunity to observe the woman's demeanor and determine her credibility. There, the officer believed the young woman was credible due to her "fearful state," and rather than asking her name, he approached the defendant in an attempt to verify the woman's statement. *D.P.*, 65 So. 3d at 126. Ultimately, the court determined that the totality of the circumstances including, *inter alia*, that the young woman provided the information in a face-to-face encounter and the officer was able to observe the woman as she spoke, supported the trial court's finding that the officer had reasonable suspicion to temporarily detain the defendant and conduct a limited pat down search for weapons. *D.P.*, 65 So. 3d at 130. See also *State v. McDonald*, 2010 ME 102, ¶¶ 8-9, 6 A.3d 283 (finding that the face-to-face encounter between an officer and a tipster was not "truly anonymous" when, although the officer did not ask for the person's name, the fact that the officer could have collected that information made the tip more reliable than one made by an anonymous phone call and did not create reason to doubt the veracity of the informant).

¶ 31        Although the informant in this case remains unidentified, she has a greater resemblance to a citizen informant than an anonymous one. *Street*, 2011 UT App 111, ¶ 12, 251 P.3d 862.

Here, the woman approached a police officer in person and engaged in a face-to-face conversation. Although she did not identify herself, there is no indication in the record that she attempted to hide her identity and by speaking to Dolan the woman risked both her anonymity and the chance that she might be identified in the future. See *Street*, 2011 UT App 111, ¶ 12, 251 P.3d 862. While the informant in this case was not at the top of the reliability scale, her status as a disinterested citizen informant suggested trustworthiness and undercut any negative implications regarding her reliability created by her unidentified status. See *Street*, 2011 UT App 111, ¶ 12, 251 P.3d 862. Furthermore, the face-to-face conversation permitted Dolan to observe the woman's demeanor and determine her credibility as she explained how she acquired the information about defendant; clearly he found her credible, as he immediately acted upon her information. See *Henness*, 644 F.3d at 318 (determining that an officer may rely upon information from an individual when, even though the officer does not know the person's name, the information was shared in person). Adding into the equation that she said she saw defendant place a machine gun in the backseat of the car, under the totality of the circumstances, the information in the tip was sufficiently reliable to allow an officer to reasonably infer that a person, in this case defendant, was involved in criminal activity and to justify a *Terry* stop. *Harris*, 2011 IL App (1st) 103382, ¶ 11.

¶ 32 Accordingly, as the officers had a reasonable, articulable suspicion to justify the *Terry* stop of defendant's car, the trial court did not err when it denied the motion to quash arrest and suppress evidence. *Cosby*, 231 Ill. 2d at 271. Absent error, defendant cannot establish plain error, and his claim must fail. *Williams*, 193 Ill. 2d at 349. Additionally, as the trial court properly denied the motion to quash arrest, defendant cannot establish how he was prejudiced by trial counsel's failure to include this issue in a posttrial motion. See *People v. Campbell*, 2012 IL App (1st) 101249, ¶ 35 (a defendant's failure to satisfy either prong of *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), defeats his claim of ineffective assistance of counsel).

¶ 33 For the reasons stated above, we affirm the judgment of the trial court of Cook County.

¶ 34 Affirmed.