NOTICE

Decision filed 11/26/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 220743-U

NO. 5-22-0743

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Macon County. |
| | ) | |
| v. | ) | No. 20-CF-603 |
| | ) | |
| LEEANDRA M. HONORABLE, | ) | Honorable |
| | ) | Rodney S. Forbes, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE BOIE delivered the judgment of the court.
Presiding Justice McHaney and Justice Vaughan concurred in the judgment.

**ORDER**

¶ 1    *Held*:    We affirm the judgment of the trial court where the evidence was sufficient for the trier of fact to have found the essential elements of the crime beyond a reasonable doubt and the unlawful possession of a weapon by a felon statute is not facially unconstitutional under the second amendment of the United States Constitution.

¶ 2    On April 19, 2022, the defendant, LeeAndra M. Honorable, was found guilty after a jury trial of one count of aggravated discharge of a firearm in violation of section 24-1.2(a)(2) of the Criminal Code of 2012 (Criminal Code) (720 ILCS 5/24-1.2(a)(2) (West 2020)) and one count of unlawful possession of a weapon by a felon in violation of section 24-1.1(a) of the Criminal Code (*id.* § 24-1.1(a)). The defendant appeals his convictions arguing that the State failed to prove the defendant guilty beyond a reasonable doubt of aggravated discharge of a firearm, and that section 24-1.1(a) is facially unconstitutional under the second amendment of the United States

1

Constitution (U.S. Const., amend. II). For the following reasons, we affirm the defendant's convictions.

¶ 3                                   I. BACKGROUND

¶ 4     On May 20, 2020, the State charged the defendant by information with one count of attempted first degree murder (720 ILCS 5/8-4(a), 8-4(c)(1)(C), 9-1(a)(1)) (West 2020)); two counts of aggravated discharge of a firearm (*id.* § 24-1.2(a)(2)); two counts of unlawful possession of a weapon by a felon (*id.* § 24-1.1(a)); and one count of aggravated unlawful use of a weapon (*id.* § 24-1.6(a)(1), (a)(3)(A-5)). The charges stem from an incident which occurred on May 16, 2020. At trial, the State indicated that it would proceed with the attempted murder count, one count of aggravated discharge of a firearm, and one count of unlawful possession of a weapon by a felon. The remaining charges were dismissed by the trial court.

¶ 5     The State called Officer Nicholas Errett of the Decatur Police Department as its first witness at trial. Officer Errett testified that on May 16, 2020, he responded with Officer Oberheim to a domestic incident at an apartment complex. Officer Errett stated that he was not equipped with a body camera since the cameras had not yet been issued, but that his vehicle was equipped with a camera. The officers determined that the incident was a verbal altercation and that no arrests were needed.

¶ 6     While at the location, Officer Errett stated that they had spoken with an individual, Herbert Madison, who was in a red 2013 Chevy Cruze in the parking lot of the apartment complex. After speaking with Madison, Officer Errett testified that the officers returned to their vehicles to enter notes into their mobile computers and that his in-car camera was not turned on during that time. Officer Errett stated that his vehicle was parked side-by-side with Officer Oberheim's vehicle,

with the driver's window down on his vehicle, and the passenger window down on Officer Oberheim's vehicle.

¶ 7    Officer Errett stated that at approximately 6 a.m., he observed Madison's vehicle back out at a fast rate of speed and drive towards the officers' vehicles. He also saw a black male coming around the corner of the apartment building and fire approximately three shots. Officer Errett testified that he observed the muzzle flash of the weapon and heard the sound of gunfire. Officer Errett described the individual firing the weapon as a black male with thick facial hair, average height, wearing a white t-shirt and black jeans. He then did an in-court identification of the defendant as the person he observed firing the weapon. Officer Errett testified that the weapon "was pointing towards the red Chevy Cruze, I believe, and he was firing the gun."

¶ 8    Officer Errett further stated that he saw the red Chevy Cruze crash into a parked vehicle and "I observed what appeared to be [the defendant] notice our squad cars and turn around and run back southbound" in the direction that he had come from. Officer Errett testified that he gave chase on foot while Officer Oberheim drove southbound with the intention of intercepting the individual. Officer Errett stated that he saw the defendant running back northbound, gave him orders to "go to the ground" at gunpoint, and that the defendant complied with that order. Officer Errett testified that it was "five to ten seconds tops" from the firing of the weapon to taking the defendant into custody.

¶ 9    Officer Errett went on to testify regarding several photographic exhibits, which were admitted by the trial court, depicting the area of the incidence; location of the vehicles; location of the shooting; location of the arrest; and a photograph demonstrating that on the day of the incident, the defendant had a mustache and full beard. Officer Errett also stated that he thought the red vehicle was a Chevy Cruze, but from the photographs, it looked more like a Chevy Malibu.

3

¶ 10    Next, the State called Officer Joseph Oberheim. Officer Oberheim's testimony was consistent with Officer Errett's testimony. He also testified that the officers had responded to a domestic incident, returned to their vehicles, and then he heard a gunshot. Officer Oberheim stated that both he and Officer Errett were in uniform and in marked vehicles.

¶ 11    Officer Oberheim stated that at approximately 6 a.m., he observed the red vehicle back up "really quick," heard a few more gunshots, and saw the red vehicle crash into a parked vehicle. Officer Oberheim testified that he drove southbound and "observed a black male wearing a white shirt and dark colored pants running with a gun in his hand." Officer Oberheim then did an in-court identification of the defendant as the individual he observed running with the gun. Officer Oberheim stated that when he first saw the defendant, the defendant was running and that Officer Oberheim did not see the defendant actually fire the weapon.

¶ 12    Officer Oberheim stated that he observed the defendant attempt to enter the passenger side of a black SUV; however, once the defendant saw Officer Oberheim's vehicle, the defendant ran northbound where Officer Errett was able to place the defendant into custody. Officer Oberheim stated that he stayed focused on the defendant until he was in custody and that when Officer Oberheim turned around, the SUV had left the area. Officer Oberheim also testified regarding various photographic exhibits, which were admitted by the trial court, regarding the incident. Finally, Officer Oberheim testified that three spent shell casings were recovered at the scene, that there was damage to the red vehicle from a fired projectile, and that the weapon was never recovered.

¶ 13    No other evidence was presented by the State or the defense. The jury returned a verdict of not guilty on the charge of attempted murder, guilty of the charge of aggravated discharge of a firearm, and guilty of unlawful possession of a weapon by a felon.

¶ 14    The defendant was sentenced on May 31, 2022. At sentencing, the defense made an oral motion for new trial stating that the State failed to prove the defendant guilty beyond a reasonable doubt at trial. The State responded and the trial court denied the defendant's oral motion. The defendant was then sentenced to 10 years' incarceration within the Illinois Department of Corrections on the aggravated discharge of a firearm conviction, and 7 years' incarceration on his conviction for unlawful possession of a weapon by a felon. The sentences were ordered to run concurrently. This appeal followed.

¶ 15                                    II. ANALYSIS

¶ 16    On appeal, the defendant raises two issues for this court's consideration. First, the defendant argues that the State failed to prove the defendant guilty beyond a reasonable doubt of aggravated discharge of a firearm. Second, the defendant argues that the defendant's conviction for unlawful possession of a weapon by a felon should be vacated as section 24-1.1(a) of the Criminal Code (720 ILCS 5/24-1.1(a) (West 2020)) is facially unconstitutional under the second amendment of the United States Constitution (U.S. Const., amend. II). We will address these issues in the order raised.

¶ 17                         A. Sufficiency of the Evidence

¶ 18    The defendant first argues that there was insufficient evidence to convict the defendant of aggravated discharge of a firearm for the conduct of firing a weapon in the direction of an occupied vehicle. The defendant states that the only evidence presented by the State regarding what direction the weapon was fired was the testimony of Officer Errett, who stated that the weapon "was pointing towards the red Chevy Cruze, I believe, and he was firing the gun." The defendant argues that this "hedging language" on an essential element of the offense was insufficient considering there was

5

no testimony from Madison, no video footage, no confession, no motive evidence, no recovered weapon, and no physical evidence tying the defendant to the offense.

¶ 19   Our standard of review for a challenge to the sufficiency of the evidence in a criminal case has been stated by our supreme court as follows:

> "When considering a challenge to a criminal conviction based upon the sufficiency of the evidence, this court will not retry the defendant. [Citation.] Rather, in such cases the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. [Citation.] Thus, it is our duty in the case at bar to carefully examine the evidence while giving due consideration to the fact that the court and jury saw and heard the witnesses. [Citations.] If, however, after such consideration we are of the opinion that the evidence is insufficient to establish the defendant's guilt beyond a reasonable doubt, we must reverse the conviction. [Citations.] The testimony of a single witness, if it is positive and the witness is credible, is sufficient to convict. [Citations.] While credibility of a witness is within the province of the trier of fact, and the finding of the jury on such matters is entitled to great weight, the jury's determination is not conclusive. Rather, we will reverse a conviction where the evidence is so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of defendant's guilt. [Citations.]" *People v. Smith*, 185 Ill. 2d 532, 541-42 (1999)

¶ 20   "A person commits aggravated discharge of a firearm when he or she knowingly or intentionally *** [d]ischarges a firearm in the direction of another person or in the direction of a

6

vehicle he or she knows or reasonably should know to be occupied by a person[.]" 720 ILCS 5/24-1.2(a)(2) (West 2020); *People v. Hardin*, 2012 IL App (1st) 100682, ¶ 28. "An essential element to aggravated discharge of a firearm is the defendant's awareness of the presence of an individual in the direction in which he fires the weapon." *People v. Daheya*, 2013 IL App (1st) 122333, ¶ 64. Our supreme court has consistently held that a " 'conviction can be sustained upon circumstantial evidence as well as upon direct, and to prove guilt beyond a reasonable doubt does not mean that the jury must disregard the inferences that flow normally from the evidence before it.' " *People v. Patterson*, 217 Ill. 2d 407, 435 (2005) (quoting *People v. Williams*, 40 Ill. 2d 522, 526 (1968)).

¶ 21    In this matter, we acknowledge that the direct evidence presented at trial was limited. However, both officers testified that they observed the red vehicle hurriedly backing up, driving toward them, hearing gunshots, and observing the defendant with a gun. Along with Officer Errett's testimony regarding the direction in which the weapon was fired, Officer Oberheim testified that there was damage to the red vehicle from a fired projectile and three spent shell casings were recovered. While we agree with the defendant that there was no forensic evidence concerning when the damage to the red vehicle occurred, a reasonable inference from this evidence that the damage was caused by the defendant firing the weapon must be allowed in favor of the State. See *People v. Jackson*, 232 Ill. 2d 246, 281 (2009).

¶ 22    The defendant cites to *People v. Charleston*, 278 Ill. App. 3d 392 (1996), as instructive in this matter. In *Charleston*, the reviewing court reversed the defendant's conviction of aggravated discharge of a firearm where the only witness testified that, after hearing the first shot, she dropped to the floor of her apartment. *Id.* at 396. The reviewing court found that, although there was strong evidence that the defendant had fired a weapon, there was no evidence regarding the direction the shots were fired. *Id.* at 398.

7

¶ 23   Here, unlike *Charleston*, Officer Errett testified that he believed that the defendant was shooting at the red vehicle. The defendant argues that Officer Errett's use of "I believe" to qualify his testimony indicated that he was less than certain about his observation concerning the direction the gun was pointing. We do not believe that such a qualifying statement calls into question Officer Errett's testimony. Officer Errett testified that he saw the muzzle flash of the weapon which indicates that Officer Errett had a clear view of the weapon and the direction it was pointed. Further, there was testimony that the red vehicle had damage from a fired projectile and there was no evidence to contradict Officer Errett's belief that the defendant was firing the weapon in the direction of the red vehicle.

¶ 24   The defendant also argues that the location and lighting conditions that day would have made it difficult for Officer Errett to clearly see the defendant. The defendant states that the photographs demonstrate that it was unlikely that Officer Errett would have had an unobstructed view of the defendant. Both officers, however, testified that it was light outside and there was no evidence that Officer Errett's view of the defendant was obstructed when he witnessed the defendant firing the weapon. Rather, Officer Errett testified that he saw the muzzle flash of the weapon which would not be possible if he had an obstructed view of the defendant or the weapon.

¶ 25   Given Officer Errett's testimony and the circumstantial evidence, we do not find that the totality of the evidence in this matter was so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of the defendant's guilt. Therefore, after viewing the evidence in the light most favorable to the prosecution, we find that a rational trier of fact could have found the essential element of the crime that the defendant had fired in the direction of the red vehicle while occupied by Madison beyond a reasonable doubt. Accordingly, we find that the defendant is not entitled to reversal on his conviction for aggravated discharge of a firearm.

¶ 26                            B. Second Amendment

¶ 27    The second issue that the defendant argues on appeal is whether the defendant's conviction

for unlawful possession of a weapon by a felon should be vacated because section 24-1.1(a) of the

Criminal Code (720 ILCS 5/24-1.1(a) (West 2020)) is facially unconstitutional under the second

amendment of the United States Constitution (U.S. Const., amend. II). The defendant argues that,

under the test articulated by the United States Supreme Court in *New York State Rifle & Pistol*

*Ass'n v. Bruen*, 597 U.S. 1 (2022), history does not support permanent government bans of firearms

possession for those with felony conviction and asserts that felons are part of "the people"

contemplated by the second amendment.

¶ 28    The defendant raises this issue for the first time on appeal, and the State argues that this

court should deem the defendant's constitutional challenge forfeited since the record on appeal is

not sufficiently developed for this court to address the issue. Specifically, the State argues that it

did not have the opportunity to present and develop factual evidence in the trial court as to the

historical tradition of regulating felons from possessing firearms.

¶ 29    Our supreme court has held that a party may raise a facial challenge to the constitutionality

of a statute at any time. *People v. Villareal*, 2023 IL 127318, ¶ 13. Unlike an as-applied

constitutional challenge, which requires a showing that the statute is unconstitutional as it applies

to the facts and circumstances of the challenging party, a facial constitutional challenge requires a

showing that the statute is unconstitutional under any set of facts, rendering any specific facts of

the challenging party irrelevant. *People v. Thompson*, 2015 IL 118151, ¶ 36. Further, the historical

record of firearm regulations has been set forth in numerous decisions which the State cites and

argues in its appellee brief. As such, we do not find that the defendant has forfeited this issue since

9

the record in this matter is sufficiently developed for this court to consider the defendant's constitutional issue.

¶ 30    In fact, this court has already addressed identical second amendment arguments in two of our recent opinions. See *People v. Stephens*, 2024 IL App (5th) 220828, ¶ 39 (finding section 24-1.1(a) facially constitutional under the second amendment); *People v. Smith*, 2025 IL App (5th) 230656, ¶ 29 (finding armed violence statute facially constitutional under the second amendment). Since 2023, numerous other Illinois courts have also addressed the issue of whether section 24-1.1(a) is facially constitutional. See *People v. Boss*, 2025 IL App (1st) 221855, ¶ 33; *People v. Travis*, 2024 IL App (3d) 230113, ¶ 33; *People v. Mallery*, 2024 IL App (4th) 231397-U, ¶¶ 22, 27; *People v. Atkins*, 2024 IL App (1st) 221138-U, ¶ 29; *People v. Martinez*, 2024 IL App (2d) 230305-U, ¶ 49; *People v. Gardner*, 2024 IL App (4th) 230443, ¶ 68; *People v. Wright*, 2024 IL App (1st) 230428-U, ¶ 25; *People v. Carldwell*, 2024 IL App (1st) 230968, ¶ 25; *People v. Box*, 2024 IL App (4th) 230649-U, ¶ 81; *People v. Burns*, 2024 IL App (4th) 230428, ¶ 21; *People v. Boyce*, 2023 IL App (4th) 221113, ¶ 16; *People v. Baker*, 2023 IL App (1st) 220328, ¶ 37; *People v. Mobley*, 2023 IL App (1st) 221264, ¶ 35.

¶ 31    Without exception, the courts in the above cited cases have determined that section 24-1.1(a) is facially constitutional. The defendant does not cite a single Illinois state court case wherein the court has determined that section 24-1.1(a) was facially unconstitutional. The defendant does cite several federal court decisions; however, decisions of the federal courts, other than the United States Supreme Court, concerning questions of constitutional law are not binding on Illinois courts. *Mekertichian v. Mercedes-Benz U.S.A., L.L.C.*, 347 Ill. App. 3d 828, 836 (2004).

¶ 32    Here, the defendant does not raise any argument that has not been previously considered and ably addressed by this court. We find no basis in the defendant's arguments in this matter to

deviate from our previous decisions regarding the facial constitutionality of section 24-1.1(a). Therefore, based upon our *de novo* review, and consistent with our previous decisions and the decisions of the numerous Illinois courts that have considered this issue, we find that section 24-1.1(a) is facially constitutional under the second amendment of the United States Constitution. Accordingly, we affirm the judgment of the trial court.

¶ 33                                      III. CONCLUSION

¶ 34      Based on the foregoing, we affirm the judgment of the trial court.


¶ 35      Affirmed.