NOTICE
Decision filed 02/13/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 230425-U

NO. 5-23-0425

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|---|---|---|
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Champaign County. |
| | ) | |
| v. | ) | No. 19-CF-73 |
| | ) | |
| STEVEN P. WILLIAMS II, | ) | Honorable |
| | ) | Benjamin W. Dyer, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE BOIE delivered the judgment of the court.
Justice McHaney concurred in the judgment.[*]

**ORDER**

¶ 1    *Held*:    We affirm the defendant's conviction where there was sufficient evidence for a rational trier of fact to have found the essential elements of the crime beyond a reasonable doubt; the trial court did not err in denying the defendant's motion to suppress; trial counsel was not ineffective; and the statute's prohibition against possession of a weapon by a felon is not facially unconstitutional.

¶ 2    On August 17, 2021, the defendant, Steven P. Williams II, was found guilty after a jury trial of one count of unlawful possession of a weapon by a felon (UUWF)[1] in violation of section

_____

[*]Justice Moore also fully participated in this case prior to his retirement. See *Cirro Wrecking Co. v. Roppolo*, 153 Ill. 2d 6 (1992).

[1]Section 24-1.1(a) of the Criminal Code of 2012 (720 ILCS 5/24.1.1(a) (West 2016)), prior to January 1, 2025, prohibited the unlawful use or possession of a weapon by a felon. As such, it has been commonly abbreviated as "UUWF." Effective January 1, 2025, section 24-1.1(a) was amended and the words "use or" were deleted. For ease of reference to prior precedent, and since "use or" was still in effect at the time of the offense, we will continue the use of the abbreviation of UUWF in this decision.

1

24-1.1(a)(2) of the Criminal Code of 2012 (Criminal Code) (720 ILCS 5/24-1.1(a) (West 2016)). The defendant appeals his conviction arguing (1) that the State failed to prove the defendant guilty beyond a reasonable doubt, (2) that the trial court erred in denying the defendant's motion to suppress, (3) that trial counsel rendered ineffective assistance of counsel concerning the DNA analysis testimony admitted at trial, and (4) that the UUWF statute is facially unconstitutional under the second amendment of the United States Constitution (U.S. Const., amend. II). For the following reasons, we affirm the defendant's conviction.

¶ 3                                  I. BACKGROUND

¶ 4     On January 8, 2019, Officer Lance Carpenter with the City of Champaign Police Department, applied for a search warrant for the use of a canine sniff at the area around the entry door of 1831 Parkdale Drive in Champaign, Illinois. According to Officer Carpenter's affidavit, on December 20, 2018, Officer Carpenter, along with Officer Monahan, met with a confidential source who informed the officers that an individual by the name of "Steven Williams" supplied cannabis intended for sale to numerous individuals; that Williams lived in close proximity to Centennial High School with his girlfriend, who owned a "newer White BMW X3" that was Williams's primary means of transportation; that the residence where Williams resided was a single-story gray house with multiple surveillance cameras on the exterior of the residence; that Williams had supplied an individual with 11 pounds of cannabis on June 5, 2018; and that Williams was associated with, and supplied firearms to, a local gang.

¶ 5     Officer Carpenter's affidavit went on to describe the actions that were taken to confirm the information provided by the confidential source including identifying the defendant as the "Steven Williams" referred to by the confidential source; the single-story gray residence with multiple surveillance cameras where the defendant resided; the proximity of the residence to Centennial

2

High School; and the BMW X3 vehicle used by the defendant. Officer Carpenter's affidavit further stated that on January 4, 7, and 8, 2019, Officers Carpenter and Monahan monitored the residence and described the activities they observed which were indicative of illegal drug activity such as out-of-state and rental vehicles at the residence and individuals entering the residence and leaving with a bag or a package. When one of these vehicles was followed and a traffic stop was attempted, the vehicle fled at a high rate of speed and law enforcement was forbidden from pursuing due to the policy of the City of Champaign Police Department. Officer Carpenter's affidavit stated that, based on his training and experience along with his knowledge that the confidential source was known to be an accurate and reliable source, he believed that there was probable cause to authorize the use of a certified narcotics canine to conduct a sniff of the area around the entry door of the residence.

¶ 6     An anticipatory search warrant for 1831 Parkdale Drive was issued the same day for items that had been used in the commission, or which constituted evidence, of the offense of unlawful possession of cannabis, including any firearms or firearm accessories. The execution of the search warrant was contingent upon a canine sniff at the entry door, conducted by a canine officer and a certified drug-detecting canine, followed by a positive alert by the canine indicating the presence of illegal drugs inside the residence.

¶ 7     The search was conducted on January 10, 2019, after a certified drug-detecting canine positively alerted. The officers also indicated that they could smell the odor of cannabis on their own. The defendant, along with his girlfriend, Arionna Smith, were present in the residence during the search. The officers seized two semi-automatic pistols; two semi-automatic rifles; 16.28 pounds of cannabis; and, approximately $40,000 in cash from the residence.

3

¶ 8    On January 11, 2019, the State charged the defendant by information with one count of unlawful possession with intent to deliver more than 5,000 grams of a substance containing cannabis in violation of section 5(g) of the Cannabis Control Act (720 ILCS 550/5(g) (West 2016)), and four counts of UUWF in violation of section 24-1.1(a) of the Criminal Code (720 ILCS 5/24-1.1(a) (West 2016)). Each UUWF count identified a specific weapon.

¶ 9    The defendant filed a motion to suppress evidence on December 31, 2019. The motion to suppress argued that the warrant was based on information from an unreliable confidential source and that the information was "stale" since there was a lapse of six months between the "tip" and the search. The defendant also argued that the search warrant was based on the positive canine sniff that the canine detected "illegal drugs" at or near the vicinity of the entryway; however, in January 2018 marijuana was no longer an illegal drug in Illinois. Thus, the defendant argued that the decriminalization of cannabis affected the power of law enforcement to conduct a search or seizure based on the odor of raw cannabis.

¶ 10    The trial court conducted a hearing on the defendant's motion to suppress on February 26, 2020. Officer Carpenter was the only witness called at the hearing, and he testified consistently with the information that he had provided within his affidavit for the search warrant. Upon completion of the hearing, the trial court found that the credibility of the confidential source, and the reliance thereon, was supported by independent corroboration as well as independent knowledge of accurate and reliable information conveyed by the confidential source in the past.

¶ 11    The trial court further found that the confidential source stated that the defendant was supplying cannabis in the present tense, implying continuity of action, and the trial court also listed the activity at the residence indicative of drug activity that Officers Carpenter and Monahan had observed. The trial court then stated that the single most important factor regarding the staleness

4

issue was whether the suspect was still engaged in a continuing course of criminal conduct and that "it's apparent from the time line that's been created and the events described in the affidavits for search warrant that there is in fact an ongoing or allegation of continuous engagement in this conduct."

¶ 12 Concerning the defendant's argument regarding the canine sniff, the trial court stated that a positive alert, in and of itself, would not justify the anticipatory search warrant being executed; however, coupled with the other information that preceded it; the reliability of the confidential source; the details that were supplied; the extensive corroboration of those details; and, the other activities that were observed and described, such that the final preliminary event of the positive sniff was sufficient for an anticipatory search warrant. Thus, the trial court found that there was probable cause for the warrant and denied the defendant's motion to suppress.

¶ 13 The defendant filed a motion to sever charges on June 24, 2020. The motion requested that the charge of unlawful possession with intent to deliver cannabis be severed from the four counts of UUWF. The trial court granted the defendant's motion by docket entry on September 14, 2020, and the matter proceeded to a jury trial on the four counts of UUWF on August 16 and 17, 2021.

¶ 14 Officer David Monahan was the first witness called by the State at trial. Officer Monahan testified that he was a police officer with the City of Champaign Police Department since 2015. On January 10, 2019, Officer Monahan stated that he was a member of the Champaign Police Department SWAT team and part of the team that executed the search warrant at 1831 Parkdale Drive. Officer Monahan stated that he was also a member of the Street Crimes Task Force and in that position, his duties at the residence that day were to take photographs and collect evidence.

¶ 15 The State provided Officer Monahan with photographs that he identified as having taken at the residence. Officer Monahan testified that some of the photographs depicted the security

5

cameras mounted to the residence and to a detached garage. Another photograph depicted a monitor that was inside the living room of the residence that showed a live view of some of the security cameras that were outside the residence and another photograph depicted a white BMW vehicle that was parked in the driveway of the residence. Officer Monahan also testified to various photographs depicting the layout of the residence and stated that there were three bedrooms, but that it appeared that only one bedroom was being utilized by adults based on the adult clothing around the room and in the drawers.

¶ 16   Officer Monahan went on to testify regarding several photographs depicting the locations where the weapons were recovered. Officer Monahan stated that an FNS-9C semiautomatic pistol was recovered from a cabinet in the kitchen; a Springfield Armory[2] XD-M semiautomatic pistol was recovered from the adult bedroom among clothing inside one of the dressers; an Anderson Manufacturing AR-15 semiautomatic rifle was recovered from a utility closet in the hallway; and, an EA Company J-15 rifle was also recovered from the utility closet in the hallway.

¶ 17   In the bedroom where the Springfield Armory XD-M semiautomatic pistol was recovered, Officer Monahan testified that there were a pair of men's size athletic shoes, men's undergarments, and a receipt addressed to the defendant dated March 1, 2017. There was also a summons or notice to appear addressed to the defendant dated October 5, 2018. Officer Monahan testified that there were also items with Arionna Smith's name and the residence's address on them, including her driver's license, a military identification, and a Firearm Owner Identification Card.

¶ 18   On cross-examination, Officer Monahan acknowledged that he had completed four firearm seizure forms. On each of those forms, Officer Monahan had indicated that the weapons were

---

[2]The charging document lists the weapon as a "Springfield Armory." Several witnesses, including Officer Monahan, referred to the weapon at trial as the "Springfield Arms." To ensure consistency and to avoid any confusion, we will refer to the Springfield weapon as the "Springfield Armory" throughout this decision.

seized at 1831 Parkdale Drive and that each weapon was possessed by Arionna Smith. Officer Monahan stated that he had placed Arionna Smith's name on the form because at the time the warrant was executed, which was before receiving any forensic analysis, Smith had informed the officers that she owned the weapons.

¶ 19    Dana Pitchford was called as a witness by the State. Pitchford testified that she was a forensic scientist that specialized in the area of forensic biology and DNA analysis at the Illinois State Police Crime Laboratory. Pitchford was qualified as an expert and then gave a general explanation of DNA and the manner in which DNA is tested. Pitchford stated that she was assigned the DNA analysis in this case, performed an analysis on a series of items, and completed a report.

¶ 20    Pitchford testified that with regard to the FNS-9C handgun and the Anderson Manufacturing AM-15 rifle, each had four or five DNA contributors and that the DNA was extremely low such that she was unable to extract any specific profile. Concerning the EA Company J-15 rifle, she was able to identify three contributors, with two major contributors being males. Pitchford testified that she was able to exclude Arionna Smith as a contributor, but not the defendant. The statistical frequency was 1 in 580,000 individuals matching that DNA profile.

¶ 21    Concerning the Springfield Armory XD-M handgun, Pitchford stated that she identified three contributors, with one major male contributor. She stated she was able to exclude Arionna Smith, but that the defendant could not be excluded and that the statistical frequency for an individual matching that DNA profile was 1 in 770 sextillion individuals.

¶ 22    Officer Lance Carpenter was the last witness called by the State. Officer Carpenter testified that he was a detective with the City of Champaign Police Department and was a member of the Street Crimes Task Force that executed the search warrant at 1831 Parkdale Drive. Officer Carpenter stated that he did not enter the residence and instead, had interviewed the defendant and

7

the other occupant of the residence, Arionna Smith, outside while the search of the residence was being conducted. Officer Carpenter testified that the interviews were audio and video recorded through his body-worn camera and he identified People's Exhibit 2 as a disk containing portions of his interview with the defendant.

¶ 23 Officer Carpenter testified that the defendant's overall demeanor during the interview was calm and cordial, and that the defendant maintained that his DNA and/or fingerprints would not be on the firearms. Officer Carpenter also testified regarding several telephone calls made by the defendant from the correctional facility wherein the defendant referred to the residence as being his home. Officer Carpenter acknowledged that he never spoke with the landlord or any of the neighbors to determine who had leased the residence and further acknowledged that he did not find any bills for the residence in the defendant's name.

¶ 24 Officer Carpenter went on to testify that the FNS-9C pistol was traced to Arionna Smith who purchased it at Rural King in Champaign on November 21, 2018. The Anderson Manufacturing AM-15 rifle was traced to a woman named Amanda Fanten, who purchased it in Riley, Indiana, on February 15, 2017. The Springfield Armory XD-M pistol was traced to a purchase by Arionna Smith at O'Herron in Danville, Illinois, but no date of purchase was provided. Finally, the EA Company J-15 rifle could not be traced.

¶ 25 The State rested and the parties stipulated that on July 11, 2016, the defendant was convicted of a forcible felony offense. The defense did not call any witnesses or present any evidence. The parties gave closing arguments, and the matter was submitted to the jury. The jury found the defendant guilty of the unlawful possession of the Springfield Armory XD-M semi-automatic pistol, and not guilty regarding the remaining weapons charges.

¶ 26    The defendant filed a motion for acquittal or in the alternative, motion for a new trial on September 17, 2021. The motion alleged that the trial court erred in denying the defendant's motion to suppress and that the State failed to prove the defendant guilty of UUWF beyond a reasonable doubt. The defendant filed an amended motion for new trial and other posttrial relief on September 19, 2022, which incorporated the issues alleged in the initial motion and added allegations that the trial court erred in refusing to bar testimony and exhibits concerning the surveillance system at the residence and that trial counsel was ineffective for failing to object to the inadequate foundation laid in the collection and scientific methodology of the DNA evidence and to Detective Monahan's testimony regarding SWAT members effectuating the search warrant.

¶ 27    The defendant was sentenced on September 20, 2022. At sentencing, the defendant entered an open plea of guilty to one count of unlawful possession with intent to deliver cannabis. Next, the trial court heard the defendant's posttrial motion and denied the same. Finally, a sentencing hearing was conducted, and the defendant was sentenced to 10 years' incarceration within the Illinois Department of Corrections on his conviction for unlawful possession with intent to deliver cannabis and a concurrent term of 8 years' incarceration on his conviction for UUWF. The defendant filed a motion to reconsider the sentence on October 18, 2022, which was denied by the trial court on June 14, 2023. The defendant filed a timely notice of appeal that brings this matter before this court.

¶ 28                                      II. ANALYSIS

¶ 29    On appeal, the defendant raises four issues for this court's consideration. First, the defendant argues that the State failed to prove the defendant guilty beyond a reasonable doubt of UUWF. Second, the defendant argues that the trial court erred in denying his motion to suppress because the search warrant lacked probable cause. Third, the defendant argues that the State failed

to lay a sufficient foundation for the DNA analysis testimony to be admitted at trial and that trial counsel was ineffective for failing to object to the insufficient foundation. Fourth and finally, the defendant argues that the defendant's conviction for unlawful possession of a weapon by a felon should be vacated because section 24-1.1(a) of the Criminal Code (720 ILCS 5/24-1.1(a) (West 2016)), is facially unconstitutional under the second amendment of the United States Constitution (U.S. Const., amend. II). We will address these issues in the order raised.

¶ 30                                    A. Sufficiency of the Evidence

¶ 31    The defendant first argues that there was insufficient evidence to convict the defendant of UUWF where there were no witnesses that saw the defendant handling the weapon, his girlfriend informed the officers that the weapon belonged to her, and there are innocent explanations as to why the defendant's DNA would be on the gun. Our standard of review for a challenge to the sufficiency of the evidence in a criminal case has been stated by our supreme court as follows:

> "When considering a challenge to a criminal conviction based upon the sufficiency of the evidence, this court will not retry the defendant. [Citation.] Rather, in such cases the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. [Citations.] Thus, it is our duty in the case at bar to carefully examine the evidence while giving due consideration to the fact that the court and jury saw and heard the witnesses. [Citations.] If, however, after such consideration we are of the opinion that the evidence is insufficient to establish the defendant's guilt beyond a reasonable doubt, we must reverse the conviction. [Citations.] The testimony of a single witness, if it is positive and the witness is credible, is sufficient to convict.

10

[Citations.] While credibility of a witness is within the province of the trier of fact, and the finding of the jury on such matters is entitled to great weight, the jury's determination is not conclusive. Rather, we will reverse a conviction where the evidence is so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of defendant's guilt." *People v. Smith*, 185 Ill. 2d 532, 541-42 (1999).

¶ 32    A person commits UUWF when he or she knowingly possesses on or about his person or on his land or in his own abode or fixed place of business, any firearm if the person has been convicted of a felony under the laws of this State or any other jurisdiction. 720 ILCS 5/24-1.1(a) (West 2016). Thus, the elements of UUWF are (1) the knowing possession or use of a firearm and (2) a prior felony conviction. *People v. Gonzalez*, 151 Ill. 2d 79, 87 (1992). When a defendant is not found in actual possession of a firearm, the State must prove constructive possession. *People v. McCarter*, 339 Ill. App. 3d 876, 879 (2003). To establish constructive possession, the State must show that the defendant had knowledge of the presence of the firearm and exercised immediate and exclusive control over the area where the firearm was found. *Id.* The control over the location where the weapon is found gives rise to an inference that the defendant possessed the weapon and often, evidence of constructive possession is entirely circumstantial. *Id.*

¶ 33    Here, the jury found the defendant guilty of the unlawful possession of the Springfield Armory XD-M semi-automatic pistol. The pistol was recovered in a room that contained men's underwear and a pair of men's shoes. The weapon was in plain sight within reach of the bed that the defendant admitted to using when he stayed overnight. Two receipts with the defendant's name were also found in the room. The defendant further admitted that he frequently stayed at the residence and that he knew there were weapons in the house. Finally, the defendant's DNA was found on the handgrip of the pistol.

11

¶ 34    Although the defendant argues that there were no witnesses that saw the defendant handling the weapon, his girlfriend informed the officers that the weapon belonged to her, and there are innocent explanations as to why the defendant's DNA would be on the gun, a jury is not required to "seek all possible explanations consistent with innocence and elevate them to reasonable doubt." *People v. Hines*, 2021 IL App (1st) 191378, ¶ 36. The jury heard the evidence, including the testimonies of the officers and the DNA expert regarding all the weapons, and found the defendant guilty of the possession of the Springfield Armory XD-M semi-automatic pistol. This court gives the finding of the jury on such matters great weight and although alternative explanations may exist, it was within the province of the jury to determine whether such alternative explanations were consistent with innocence or reasonable doubt.

¶ 35    The defendant also argues that the State failed to prove constructive possession since there was no evidence directly linking the defendant to the drawer or the dresser where the weapon was found that would indicate that the defendant had immediate and exclusive control of the area. Our supreme court has, however, consistently held that a conviction may be based solely on circumstantial evidence and " 'to prove guilt beyond a reasonable doubt does not mean that the jury must disregard the inferences that flow normally from the evidence before it.' " *People v. Patterson*, 217 Ill. 2d 407, 435 (2005) (quoting *People v. Williams*, 40 Ill. 2d 522, 526 (1968)).

¶ 36    The State need not disprove or rule out all possible factual scenarios in order to sustain its burden. *People v. Newton*, 2018 IL 122958, ¶ 24. In this case, we find that there was sufficient evidence to raise the inference of the defendant's knowledge and possession of the Springfield Armory XD-M semi-automatic pistol. We do not find that the evidence was so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of the defendant's guilt. Accordingly, after viewing the evidence in the light most favorable to the prosecution, we find that a rational

trier of fact could have found the essential elements of the crime beyond a reasonable doubt and that the defendant is not entitled to reversal on his conviction for UUWF.

¶ 37                                  B. Motion to Suppress

¶ 38     Next, the defendant argues that the trial court erred in denying the defendant's motion to suppress. The defendant argues that the initial search warrant lacked probable cause because it was based on a stale tip from an unreliable confidential source. According to the defendant, the tip alleged that a crime occurred in June 2018 and yet law enforcement officials were not informed of the incident until December 2018. The defendant further argues that there was insufficient evidence to believe that the alleged criminal activity was ongoing and that the confidential source lacked credibility since only readily known facts, and no predictive information, was provided.

¶ 39     We apply a two-part standard of review when considering the propriety of a trial court's ruling on a motion to suppress evidence. *People v. Cosby*, 231 Ill. 2d 262, 271 (2008). We give the trial court's factual findings great deference, and will reverse those factual findings only if they are against the manifest weight of the evidence. *People v. Vences*, 2023 IL App (4th) 220035, ¶ 30. Our review of the trial court's ultimate legal ruling on the motion to suppress evidence, however, is *de novo*. *Id.* We further note that the defendant bears the burden of proof on a motion to suppress and only if the defendant makes a *prima facie* showing that the evidence was obtained in an illegal search or seizure, does the burden then shift to the State to provide evidence to counter the *prima facie* case. *People v. Cregan*, 2014 IL 113600, ¶ 23. The ultimate burden of proof, however, remains with the defendant. *Id.*

¶ 40     We note that the defendant states that this court should apply only a *de novo* review since the underlying facts are not in dispute. A *de novo* review is appropriate in cases where the facts and witness credibility are not in dispute. *People v. Sanders*, 2013 IL App (1st) 102696, ¶ 12. Here,

13

however, the defendant is challenging the trial court's findings that the criminal activity was ongoing and also the credibility of the confidential source. Since there are factual and credibility issues, we will give deference to the trial court's factual findings and only reverse those factual findings if they are against the manifest weight of the evidence. As previously stated, we will review *de novo* the trial court's ultimate legal ruling on the motion to suppress.

¶ 41 Probable cause for a search must be current and not based upon facts which existed in the past unless there is a reason to believe those facts are still in existence. *People v. Thompkins*, 121 Ill. 2d 401, 435 (1988). There is no cutoff period expressed in days or weeks beyond which probable cause ceases to exist. *Id.* Instead, probable cause is determined on a case-by-case basis upon the application of practical considerations of everyday life and common sense. *Id.* at 435-36. "It has been stated that the continuity of the offense is the single most important factor in the determination of whether the probable cause is valid or stale." *People v. McCoy*, 135 Ill. App. 3d 1059, 1067 (1985).

¶ 42 In this matter, the trial court found that the events detailed in the affidavit for the search warrant alleged ongoing or continuous engagement in conduct indicative of illegal drug activity. The trial court noted that the confidential source stated that the defendant was supplying cannabis in the present tense, implying a continuity of action, and further noted that the observations of the law enforcement officers were recent and indicative of drug activity at the residence. As such, the trial court found that "it's apparent from the time line that's been created and the events described in the affidavits for search warrant that there is in fact an ongoing or allegation of continuous engagement in this conduct."

¶ 43 The defendant argues that the tip was stale because the confidential source stated that the defendant had supplied 11 pounds of cannabis to an individual in June 2018 and did not convey

14

that information to police until December 2018. The defendant also argues that the officers' subsequent observation of the activities at the residence did not remediate the stale information since the officers never observed any actual illegal conduct.

¶ 44    We acknowledge that the confidential source only identified one specific supply of cannabis to an identified individual in June 2018, a fact which existed in the past. However, the confidential source also stated that the defendant "supplies cannabis intended for sale to numerous subjects in the Central Illinois area" indicating that the defendant was still supplying illegal cannabis to individuals at the time of the tip. The tip was received by law enforcement officers on December 20, 2018, and the search warrant was obtained on January 8, 2019. As such, the tip was not over six months old as the defendant argues, but less than 20 days elapsed between the tip and the obtainment of the warrant. The search was conducted on January 10, 2019, after a positive alert from a certified canine, 21 days after the tip was received by law enforcement officers. The fact that the confidential source only listed one specific sale of cannabis in June 2018 does not refute the fact that the confidential source had provided information to law enforcement that the defendant was also currently supplying cannabis in December 2018. Therefore, we find that the trial court's finding that the tip was not stale based on ongoing allegations of the defendant's continuous engagement in the conduct was not against the manifest weight of the evidence.

¶ 45    The defendant also argues that the confidential source lacked credibility. The defendant states that the source informed the officers of the prior supply of cannabis to an individual and that the cannabis was recovered from that individual in a traffic stop, but argues that the officers never confirmed that it was the defendant that provided that cannabis. The defendant also argues that although the confidential source informed the officers of the defendant's appearance,

15

approximately where his girlfriend resided, and what vehicle he utilized, that did little to show that the source had credible information about any illegal activities.

¶ 46     A confidential tip will be deemed more reliable if the details are confirmed or corroborated by law enforcement. *Sanders*, 2013 IL App (1st) 102696, ¶ 15. Here, the confidential source knew details about an individual by the name of "Williams," his residence, his girlfriend, and the vehicle that the individual used, such that law enforcement officers were able to confirm the information and to determine that "Williams" was in fact, the defendant. The confidential source also provided details about the drugs that the defendant sold and the firearms he supplied. "When a tip is proved accurate on some counts, *** the informant is more likely correct about other details, including the alleged illegal activity." *People v. Tisler*, 103 Ill. 2d 226, 238 (1984). Since the confidential source provided information that was accurate and confirmed by law enforcement with regard to the defendant, it was more likely that the information provided by the confidential source regarding the defendant's illegal activities was also accurate.

¶ 47     Concerning the observations by the law enforcement officers, the question is not whether the activities observed are innocent or incriminating, but "whether the actions of the suspects, whatever their nature, give rise to an inference that the informant is credible and that he obtained his information in a reliable manner." *Illinois v. Gates*, 462 U.S. 213, 269 (1982) (White, J. concurring); see *Tisler*, 103 Ill. 2d at 246 (adopting the *Gates* standard for resolving probable-cause questions under the Illinois Constitution that involve an informant's tip). Here, experienced officers observed activities that were indicative of illegal drug activity which provided further inference that the confidential source was credible and had obtained the information in a reliable manner. We also note that, beyond the information the confidential source provided concerning the defendant, Officer Carpenter's affidavit stated that the confidential source had once

16

participated in a controlled purchase with someone other than the defendant and had also provided information regarding an unrelated shooting investigation that the officers were able to corroborate as factual.

¶ 48    Probable cause deals with probabilities, not certainties. *Gates*, 462 U.S. at 231. "Under *Gates*, probable cause to search exists if, considering the totality of the circumstances, a reasonable person would believe that an offense has occurred and the evidence of the offense is in the place to be searched." *People v. Taylor*, 253 Ill. App. 3d 768, 771 (1993). In this case, the trial court determined that the confidential source was reliable and provided information that the defendant was engaging in the ongoing illegal sale of cannabis. We do not find the trial court's factual findings against the manifest weight of the evidence. Further, upon *de novo* review, we find no error in the trial court's ultimate legal ruling to deny the defendant's motion to suppress.

¶ 49                    C. Ineffective Assistance of Trial Counsel

¶ 50    The defendant next argues that trial counsel rendered ineffective assistance of counsel by failing to object to the insufficient foundation of the DNA evidence at trial. The defendant states that there was no evidence about how the guns arrived at the crime laboratory or how the DNA samples had been extracted. The defendant argues that the DNA evidence played a critical part in the State's case against the defendant, yet the State failed to present any testimony regarding how the DNA was preserved or a sufficient chain of custody for the DNA evidence. As such, the defendant argues that his conviction should be reversed and the matter remanded for a new trial.

¶ 51    In determining whether a defendant was denied the effective assistance of counsel, we apply the familiar two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, to prevail on a claim of ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the

17

defendant. *Id.* at 687. More specifically, the defendant must demonstrate that counsel's performance was objectively unreasonable under prevailing professional norms and that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* A defendant must satisfy both prongs of the *Strickland* test to prevail and the failure to establish either prong precludes the finding of ineffective assistance of counsel. *People v. Henderson*, 2013 IL 114040, ¶ 11.

¶ 52    In order to establish an adequate chain of custody, the State must show that law enforcement took reasonable protective measures to ensure that a piece of evidence is the same item that law enforcement recovered. *People v. Smith*, 2014 IL App (1st) 103436, ¶ 47. The State is not required, however, to present testimony from every person in the chain of custody, nor must the State exclude every possibility of tampering or contamination. *People v. Harris*, 352 Ill. App. 3d 63, 69 (2004). The State is only required to show that it was unlikely that the evidence had been altered. *Smith*, 2014 IL App (1st) 103436, ¶ 47. Once the State establishes this *prima facie* showing that it is improbable that the evidence was compromised, the burden shifts to the defendant to produce evidence of actual tampering, substitution, or contamination. *People v. Woods*, 214 Ill. 2d 455, 468 (2005). Any deficiencies in the chain of custody that do not constitute actual tampering, substitution, or contamination merely affect the weight of the evidence, not its admissibility. *Id*. at 467.

¶ 53    Here, the defendant argues that the State failed to make a *prima facie* case of a sufficient chain of custody since there was no evidence about how the guns arrived at the crime laboratory or how the DNA samples had been extracted from the weapons. We note, however, that Officer Monahan testified regarding the recovery of the weapons and placing them in a one-way locker

18

that only the evidence technician could open. Former Detective Griffen provided testimony regarding the collection of the defendant's DNA and Pitchford testified regarding the laboratory's procedures to minimize the danger of any cross-contamination. Although Pitchford did not specifically testify that those procedures were followed with the DNA evidence in this matter, Pitchford did testify that the "steps are taken with every case that we work from beginning to end."

¶ 54    While we acknowledge there were gaps in the chain of custody, *i.e.* no evidence about who transported the firearms and the defendant's buccal swab between the police station and the laboratory, as previously stated, the State was not required to present testimony from every person in the chain of custody. Our review of the testimony at trial demonstrates that the State provided sufficient evidence that it was unlikely that the evidence had been altered. Therefore, we find that the State made a *prima facie* case of a sufficient chain of custody and note that the defendant has not offered any evidence or argument of actual tampering, substitution, or contamination of the DNA evidence.

¶ 55    Further, as the trial court noted at the hearing on the defendant's motion for new trial, allowing gaps in the chain of custody is "a well-known tactic of defense lawyers." By not requiring numerous individuals in suits or uniforms to lay the foundation for something, the defense does not have these individuals coming in "and cloaking themselves with the respectability of their offices, and trying to impress the jury that way."

¶ 56    We agree. The defendant must overcome a strong presumption that defense counsel's conduct falls within the wide range of reasonable professional assistance and that the challenged conduct constitutes sound trial strategy. *Strickland*, 466 U.S. at 689. Defense counsel is also not required to undertake fruitless efforts to demonstrate his effectiveness. *People v. Williams*, 147 Ill. 2d 173, 238-39 (1991). Here, there is no indication that defense counsel had any reason to believe

19

that the weapons or any of the DNA evidence had been tampered with or contaminated, and had the defendant objected, the State would have had an opportunity to establish a more complete chain of custody by bringing in additional witnesses.

¶ 57    We find nothing deficient about defense counsel's performance with regard to the foundation of the DNA evidence. The defendant is required to satisfy both prongs of *Strickland*, and as previously stated, the failure to satisfy either precludes a finding of ineffective assistance of counsel. Therefore, we find that defense counsel did not render ineffective assistance of counsel by failing to object to the foundation of the DNA evidence and we need not address the prejudice prong at all.

¶ 58                                     D. Second Amendment

¶ 59    The defendant's final argument on appeal is that the defendant's conviction for UUWF should be vacated because section 24-1.1(a) of the Criminal Code (720 ILCS 5/24-1.1(a) (West 2016)), is facially unconstitutional under the second amendment of the United States Constitution (U.S. Const., amend. II). The defendant raises this issue for the first time on appeal. Issues not raised in a posttrial motion in the trial court are forfeited for review on appeal. *1010 Lake Shore Ass'n v. Deutsche Bank National Trust Co.*, 2015 IL 118372, ¶ 14. Our supreme court, however, has held that a party may raise a facial challenge to the constitutionality of a statute at any time. *People v. Villareal*, 2023 IL 127318, ¶ 13.

¶ 60    At this juncture, we note that the State has filed several motions to cite additional authority on this issue. The State filed a motion to cite *United States v. Rahimi*, 602 U.S. 680 (2024), on July 2, 2024, which this court granted on July 11, 2024, and a motion to cite *People v. Stephens*, 2024 IL App (5th) 220828, on October 2, 2024, which this court granted on October 24, 2024. The State also filed a motion to cite *People v. Smith*, 2025 IL App (5th) 230656, on October 31, 2025, which

20

this court directed would be taken with the case. We now grant the State's motion to cite *Smith* and state that these additional decisions have been reviewed and considered in conducting our analysis on this issue.

¶ 61　The defendant argues that, under the test articulated by the United States Supreme Court in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), history does not support permanent government bans of firearms possession for those with felony convictions and asserts that felons are part of "the people" contemplated by the Second Amendment. The defendant argues that the State cannot show, now that the means-end scrutiny for evaluating gun laws has been eliminated, any historical analogue for a categorical and permanent ban that carries criminal penalties.

¶ 62　This court recently addressed this issue in *People v. Honorable*, 2025 IL App (5th) 220743-U. We noted that, since 2023, numerous other Illinois courts have also addressed the issue of whether section 24-1.1(a) was facially constitutional. *Id.* ¶ 30 (citing 13 cases wherein the issue was addressed.) We further noted that, without exception, the cited courts had determined that section 24-1.1(a) is facially constitutional. The defendant does not cite a single Illinois court decision wherein an Illinois court has determined that section 24-1.1(a) was facially unconstitutional.

¶ 63　The defendant also does not raise any argument that has not been previously considered and ably addressed by this court. We find no basis in the defendant's arguments in this matter to deviate from our previous decisions regarding the facial constitutionality of section 24-1.1(a). Therefore, based upon our *de novo* review, and consistent with our previous decisions and the decisions of the numerous Illinois courts that have considered this issue, we find that section 24-1.1(a) is facially constitutional under the second amendment of the United States Constitution.

21

¶ 64　Finally, we note that the defendant's notice of appeal, filed on June 20, 2023, states that the defendant is appealing his conviction and sentence. Illinois Supreme Court Rule 341(h) (eff. May 25, 2018), states that an appellant's brief should contain an argument "which shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on." A defendant's failure to support his contentions with citation to legal authority or coherent argument forfeits review of his claims upon appeal. Ill. Sup. Ct. R. 341(h)(7) (eff. May 25, 2018); *People v. Sprind*, 403 Ill. App. 3d 772, 778-79 (2010). In this matter, the defendant has put forth numerous arguments, properly supported, concerning his conviction for UUWF. He has not, however, presented any arguments with regard to his sentence. As such, we find any purported errors concerning the defendant's sentence to be forfeited.

¶ 65　After careful consideration of the issues raised in this appeal, we find that there was sufficient evidence for the jury to have found the essential elements of UUWF beyond a reasonable doubt and that the trial court did not err in denying the defendant's motion to suppress where the information provided by the confidential source was not stale and the confidential source was determined to be reliable. We further find that the defendant's trial counsel did not render ineffective assistance of counsel when he failed to object to the foundation of the weapons or the DNA evidence at trial, and finally, that section 24-1.1(a) is facially constitutional under the Second Amendment of the United States Constitution. Based on these findings, the defendant is not entitled to reversal of his conviction for UUWF.

¶ 66　　　　　　　　　　　　　　III. CONCLUSION

¶ 67　For the foregoing reasons, we affirm the defendant's conviction for UUWF.

¶ 68　Affirmed.